KENT CONSTRUCTION COMPANY, INC., Appellant, v. THE STATE OF NEW YORK, Respondent.

Third Department, March 4, 1925.

**State — claim by contractor for extra work and materials in resurfacing highway — contractor not entitled to extra compensation for building road in halves where contract did not provide therefor and no supplemental agreement was made — State Commissioner of Highways was not required by Highway Law, § 77, to request closing of highway — contract was for approximate quantities at unit prices — supplemental contract for quantities in excess of approximate quantities stated not required under Highway Law, § 131, and State Finance Law, § 16, as amended by Laws of 1913, chapter 342, to enable contractor to recover — claims for excess quantities denied except as to one item — execution, after completion of work, of supplemental contract to cover excess quantities, not required.**

A contractor for the resurfacing of a highway is not entitled to recover for the extra work required in resurfacing the road in halves, where that was the only way in which it could be resurfaced, unless the road were closed, and the contract provided that the contractor should conduct its work in such a manner as to interfere with traffic as little as possible and so that the road should not be closed except in the manner provided by section 77 of the Highway Law.

The State Commissioner of Highways, who did not direct the closing of the road, was not under any obligation to do so, and, therefore, his failure to direct the closing of the road did not give rise to a cause of action for the extra work required in constructing the road in halves.

A claim for the extra work cannot be based upon a conversation between the engineer in charge of the resurfacing and the contractor, to the effect that the engineer told the contractor that the traffic was so heavy that the road could not be closed, that the road would have to be built in halves, and that the State would make a supplemental agreement and pay the expense of keeping the road open, where the supplemental agreement referred to was never entered into between the State and the contractor.

It was not necessary for the contractor and the State to enter into a supplemental contract pursuant to section 130 of the Highway Law and section 16 of the State Finance Law, as amended by chapter 342 of the Laws of 1913, in order to enable the contractor to recover for materials furnished in excess of the estimated quantities stated in the contract, since the contract provided that the quantities stated were estimated merely and not actual, and that the contractor was to be paid according to the unit prices contained in the bid, and since the excess quantities used were not used for the purpose of constructing a different road, but were required to complete the resurfacing of the road in question in the proper manner.

It is not in the interest of the State or of contractors that slight changes unavoidably attending work on road construction as it progresses should be regarded as limiting the original contract and requiring the making of a new one.

The claim for excess quantities of stone supplied for the top course must be disallowed, since it was found, as a matter of fact, that the completed top

course was not any thicker than that specified in the contract and that, therefore, extra stone was not supplied.

The claim for extra stone laid on the top course, which was made necessary by building the road in halves, cannot be allowed, since the top course as completed was not any thicker than that required by the contract.

A claim for extra materials used in laying additional sub-base should be allowed, since the contract did not specify the depth to which the sub-base was to be laid, but required the laying of the sub-base as directed by the engineer, and since the sub-base, as laid, contained quantities in excess of those estimated.

A clause in the contract to the effect that any increase in quantities, or extra work performed, or extra material furnished, should be covered by a supplemental contract as provided by law, does not prevent the claimant from recovering, in view of the holding that a supplemental contract is not necessary to enable the claimant to recover for excess quantities used, and is only required by the statute where there has been a modification of the original contract.

The contention by the State that a supplemental contract should have been executed after the completion of the work to cover the excess quantities, cannot be sustained, although it appears that for years the State Highway Commission has solemnly required the making of such agreements, for, if the contract was not required before the work was done, it was not necessary to make it after the work was finished, and if it was required before the work was commenced, a contract executed after the work was finished would be without consideration.

APPEAL by the claimant, Kent Construction Company, Inc., from an order made by the Court of Claims, entered in the office of the clerk of said court on the 27th day of December, 1923, dismissing the claim on the merits, and also from a judgment entered in said clerk's office on the 31st day of December, 1923, pursuant to said order.

*Brackett, Todd, Wheat & Wait* [*Benjamin P. Wheat* of counsel], for the appellant.

*Albert Ottinger, Attorney-General* [*James Gibson* of counsel], for the respondent.

H. T. KELLOGG, J.:

The claimant, in the year 1919, entered into a contract with the State of New York whereby it agreed to resurface four and ninety-three one-hundredths miles of a highway, known as the Delhi-Middletown county highway, in the county of Delaware. The claimant performed its contract and received a sum of money representing the contract total as modified by a supplemental agreement. It then filed this claim for a sum of money in excess of the contract total as modified. The claimant demands a recovery for damages alleged to have been caused by the resurfacing of the highway in halves. It also demands a recovery for the value of materials furnished in excess of quantities estimated, based upon the unit prices of the contract. The Court of Claims, after a trial, dismissed the claim.

The claimant agreed as follows: " The contractor agrees to conduct his work so as to interfere with traffic as little as possible, and so that the road shall not be closed except in the manner provided by section 77 of the Highway Law, being chapter 30 of the Laws of 1909 and the acts amendatory thereto." In the year 1919 section 77 of the Highway Law provided as follows: " If it shall appear necessary to close any highway in order to permit a proper completion of any work of improvement thereon conducted by the State, county or town, the district or county superintendent shall, upon request of the division engineer, or direction of the State Commissioner of Highways execute a certificate and file the same in the office of the town clerk of the town in which such highway is situated." (Laws of 1918, chap. 148.) The section further provided that, upon the filing of the certificate, the town superintendent should close the highway; that he should provide a temporary highway in lieu of the closed highway; that for this purpose he might enter upon adjoining land; that " not more than two miles of any highway shall be closed at any one time." The State Commissioner of Highways never directed the road in question, or any portion of it, to be closed. The road was never in fact closed by order of a public official or otherwise. The statute did not prescribe the closing of a road under any given state of facts. It merely permitted the Commissioner to effect a closing when " it shall appear necessary." The State did not contract with claimant to close the road. On the contrary, it required the claimant to keep the road open except as ordered by the Commissioner. Therefore, no duty, contractual or statutory, rested upon the Commissioner to make a closing, and no cause of action for a failure to close sprang into being. The contract further provided: " Whenever the road is not closed the work must be so conducted that there shall at all times be a safe passageway for traffic. Whenever it is necessary to divert traffic from that part of the highway actually under construction the contractor shall keep a passable driveway open alongside the road as directed by the engineer." The road was situated in a wild and mountainous region. It wound about, for long distances, between high banks on one side and a creek on the other. Temporary driveways " alongside the road " were evidently an impossibility. Gordon, the president of the claimant, was asked, " Couldn't it be done alongside the road right where these farmers' yards were? " He replied, " Absolutely impossible in many cases." Gordon had previously written the Commissioner as follows: " This is a narrow strip of road running from the village of Fleischmanns to the village of Margaretville with a hill or mountain on one side and

a creek at the bottom of a declivity of varying depths on the other side. Owing to the narrowness of the road it is impossible to let the traffic by on the road, and investigation reveals that there is no practical detour for the local traffic." Roadways " alongside " being impossible, and the road under construction never having been closed, the duty of the claimant was that duty which is expressed in the term of the contract first above quoted. It was obliged to conduct its work " so that the road shall not be closed," and " so as to interfere with traffic as little as possible." Traffic upon the road was heavy. Automobiles passed a given point upon the road at an average of more than one car in two minutes. It is evident that sections of the road, covering its entire width, could not be excavated, filled with stone and dressed with tar without lengthy and serious interruptions of traffic. It is equally evident that the interruptions could be avoided or greatly minimized if the road were built in halves, so that the road for one-half its width, whether improved or unimproved, would at all times be open for the passage of automobiles and unobstructed by work being done thereupon. Gordon said that working the road as a whole " would have restricted and delayed the traffic but it would not have closed the road " because the travelers " the minute they struck it, would have gone around on these detours, however hard it may seem to be, rather than go over that road unless they knew that they could get through so nicely." In other words, travelers would be attracted by a road worked in halves, since they could " get through so nicely," whereas they would be driven by a road otherwise worked to avoid it and take to the mountainous detours. Clearly then, since the road was not closed, and roadways " alongside " were not feasible, the claimant, in order to " interfere with traffic as little as possible " must have built the road in halves. That the claimant was not under compulsion from the Commissioner of Highways so to build the road is apparent from the circumstances and the proof. The engineer in charge told Gordon that traffic on the road was so heavy that the road could not be closed; that the road would have to be built in halves; that the State would make a supplemental agreement and pay the expense of keeping the road open. The parties to the conversation seem to have considered that the only alternative to building the road in halves was to close the road under the statute. Gordon testified in relation to his conversation with the engineer as follows: " He said he did not see how we could avoid it; so then I said, if that be so, why we will make the best of it and we will accept the supplemental agreement." He was asked: " And you never took it upon yourself to make any complaint to anybody about it, did you? " He

answered: " No; I never complained to the engineer; no." It thus appears that the engineer exerted no force; that Gordon made no protest against building the road in halves; that he voluntarily undertook so to build it. The principles enunciated in *Gearty* v. *Mayor* (171 N. Y. 61), therefore, do not apply. Gordon, instead of resisting the engineer, was quick to accept the proposition of a supplemental agreement. The negotiations had for such an agreement never resulted in its execution. The appropriate officials of the State never so agreed, and, had they done so, the contract made would have been of doubtful validity. No consideration for such an agreement was furnished by the claimant. The claimant, in building the road in halves, did no more than to perform its simple contract duty so to construct the road " as to interfere with traffic as little as possible." Therefore, it has no cause of action for the excess cost of building in halves over building as a whole.

The contract consisted in part of an " itemized proposal." This paper embodies a schedule having four columns. The first column is entitled " approximate quantities," the second, " items with unit bid price written in words; " the third, " unit bid price " the fourth, " amount bid." Proposals were furnished by the State to all bidders. All the matter contained in the proposals, when complete, was set forth in print and was uniform, except the prices bid, which were inserted by bidders in typewriting. The furnishing of fifteen separate items of material was called for. The material was inclusive of the labor required to place it on the job. Claimant's proposal in the matter of stone for the sub-base or foundation course, in the first column under the heading " Approximate Quantities," set forth the typewritten figure 2,000. In the second column, under the heading " Items with Unit bid price written in words," it set forth the printed words " cubic yards foundation course, field or quarry stone, for," followed by the typewritten words " three and 60/100 Dollars," followed by the printed words " per cubic yard." In the third column, entitled " Unit bid price," it set forth the typewritten figure " 3.60." In the fourth column, entitled " Amount bid," it set forth the printed figure " 7200.00." Bids for the remaining items, varying as to material and price, were made in a similar manner. In each case there were typewritten figures for the unit prices bid and the lump sum bid. Figures for the latter, appearing in the fourth column, were followed, at its foot, by the figure " 49315.10," over against which appeared the printed words " Total or gross sum bid." Each minor total was the mathematical product of the figure appearing under " Approximate quantities " multiplied by the figure appearing

under the title "Unit bid price." As the figure constituting the factor of quantities was merely "approximate," while the figure representing "Unit bid price" was definite, it necessarily follows that the quality of variability which affected the quantities entered into the product to affect the minor sums bid as well as the "Total or gross sum bid." Thus, the unit prices bid were unchangeable, while the gross sums bid were indefinite and inconstant. Clearly then, on the face of the paper the claimant's promise, in relation to the resurfacing of the particular road specified, required it to place the quantities directed to be furnished to that end, and reasonably necessary therefor, rather than the quantities estimated. On the other hand, the State's promise to pay was not the gross sum bid, but the quantities actually furnished multiplied by unit prices.

The correctness of the conclusion thus arrived at is made more certain by other provisions of the contract. Thus the "Information for Bidders," which formed an essential part of the contract, contained the following: "Attention also is called to the uncertainty in the quantities of many of the items involved in this contract. The quantities of excavation, sub-bottom course, etc., are specially subject to such uncertainties. Generally the intention has been to estimate all quantities liberally." Self-evidently, the nature of the soil underneath a road to be improved, as revealed by actual work upon the road, will variously determine the amount of sub-base required. Therefore, it is essential, in such a contract as this, that the sub-base be contracted for at unit prices. The itemized proposal contained the following: "The undersigned further agrees to accept the aforesaid 'unit bid' prices in compensation for any additions or deductions caused by variation in quantities due to more accurate measurements, or by any changes or alterations in the plans or specifications of the work." The paper entitled "Contract Agreement" contained the following: "The State, however, reserves the right to make such additions, deductions or changes as it deems necessary, making an allowance or deduction therefor at the prices named in the proposal for this work, and this contract shall in no way be invalidated thereby."

The State contends that the claimant may not have a recovery for quantities in excess of the quantities, classed as "approximate" in the itemized proposal, for the reason that no supplemental contract therefor, in compliance with section 130 of the Highway Law, was executed. That section provides: "If a supplemental contract be executed by the Commission for the performance of work or furnishing of material not provided for in the original contract, the amount to be charged thereunder for any such work

or material shall not exceed the rate for which similar work or material was agreed to be performed or furnished under the original bid upon which the contract was awarded. Such supplemental contract shall not be binding unless it be approved by the Commission in case of a State highway and in case of a county highway, by the chairman of the board of supervisors and the district or county superintendent." It also contends that no supplemental contract was signed by the Comptroller, as required by chapter 342 of the Laws of 1913 (amdg. State Finance Law, § 16), and that, therefore, the claimant may not recover. The provision referred to reads as follows: "Before any contract made for or by any State charitable institution, reformatory, house of refuge, industrial school, officer, department, board or commission, shall be executed or become effective, when such contract exceeds one thousand dollars in amount, it shall first be approved by the Comptroller and filed in his office."

The contract obligation assumed originally by the claimant was of a two-fold nature. (1) The claimant promised absolutely to construct the specified road. (2) It promised conditionally to construct a different road at unit prices if so directed. This was in truth an irrevocable offer to make a new contract at the option of the State. Claimant would not have been bound, however, to perform under this offer, a new obligation, directed to be performed, unless the State itself was bound. The statutes cited provide that the State is not bound upon a new obligation unless a supplemental contract in writing is signed by the officers named therein. If, therefore, the claimant had received oral orders to build a road other than the contract road, without the tender of a new contract already executed, it might rightly have stopped all work, and self-preservation would have required it so to stop. Certainly it could not have been bound to build if the State had not been bound to pay. Now, a supplemental contract, in the case of a county highway, must be executed by the State Commissioner, by the chairman of the county board of supervisors, and the district or county superintendent. It must also be executed by the Comptroller of the State. If an original contract be changed, then the contractor must suspend work until all such officials have signed, or run the risk of doing work for which the State will never pay or be obligated to pay. Months, if not years, might elapse, before the county board of supervisors authorized its chairman to sign, or that board might, at will, refuse to grant the authority. Meanwhile the road would be hung up. Meanwhile, if the delay became unreasonable, the contractor might justifiably throw up his original contract and sue for a breach. It is not in the interest

**204** KENT CONSTRUCTION CO., INC., *v.* STATE OF NEW YORK.

Third Department, March, 1925. [Vol. 212

of the State, therefore, as it is not in the interest of contractors, that slight changes, unavoidably attending work of road construction as it progresses, should be regarded as altering the original contract and requiring the making of a new. We do not think that, in this case, the contract obligations were altered so that, under the statutes, a supplemental contract was required.

The claim for excess quantities was three-fold. (1) A claim for excess quantities of stone supplied for the top course. The contract called for a top course of three sizes of broken stone, dressed with a bituminous material, rolled to make a three-inch course. Self-evidently, it would be impossible to place loose stone upon a road with such accuracy that, when impacted by a roller and dressed with tar, it would make a three-inch course, no more, no less, not even by a shade. The duty was imposed, in this case, upon the engineer in charge, not to alter the contract, but to secure its execution. If under his direction stone had been laid to a depth which, upon rolling, made a top course thicker than three inches, by the fraction of an inch, we would say that the contract had not been altered, that no supplemental contract was necessary, and that the claimant was entitled to pay for the excess stone at unit prices. The difficulty with this branch of the claim is that the trier of fact, upon satisfactory proof, has determined that the completed top course was only three inches thick. That being so, there were no excess quantities. (2) A claim for additional stone for top course made necessary by building the road in halves. It seems that in such a method of building the rollers used must repeatedly travel the same path. As the outside wheels are heavier than the inside greater impaction occurs upon the edges than in the center. Therefore, more stone has to be laid to get the correct incline. Nevertheless, the top course, when completed, does not show a greater cubic content of laid stone. In this case, the top course did not show excess quantities. The laying of excessive loose stone was due to building the road in halves. That, however, as we have held, was the claimant's contract duty. (3) A claim for additional sub-base. We think that the claimant, in respect to this claim, is right. The contract did not specify the depth to which the sub-base was to be laid. It merely called for a "foundation course field or quarry stone" "as directed by the engineer." Confessedly the claimant performed its contract according to its terms. Necessarily, then, it must have laid the sub-base "as directed by the engineer." It is agreed that it placed more stone for sub-base than the quantities estimated. For the excess it is entitled to payment. We cannot upon this record satisfactorily determine the excess yardage provided.

It may be well to note an additional contention made by the State. It contends that the claimant cannot have an award for excess quantities over the approximate quantities by reason of a term in the contract which reads: "It is further agreed that any increase in quantities or extra work performed or extra material furnished shall be covered by a supplemental contract as provided in chapter 30 of the Laws of 1909 and the amendments thereto, and that no claim will be made by the contractor for any such items performed or furnished before such supplemental contract shall have been approved by the Comptroller of the State of New York and executed by the Commissioner of Highways as provided by chapter 342 of the Laws of 1913 and amendments thereto." It will be noted that the contract requirements are, by express reference, nothing more than the statutory requirements. We have already shown that the statutes require a supplemental contract only where there has been a modification of the original contract. That ought to end the matter. However, the State ingenuously suggests that, at the conclusion of the work, although no alteration in the contract was involved, there should have been a formal supplementary contract setting forth the excess quantities. It would not be necessary to treat such an argument seriously were it not that the proof shows that the State Highway Commission for years has solemnly required the making of such agreements. Self-evidently, a so-called contract, whereby a contractor in form agrees to furnish what he has already furnished, for a sum which the State agrees to pay, is no contract at all. One cannot, by a promise, obligate himself to do what he has already done. If what he has done was done gratuitously, then a promise to do it furnishes no consideration for a promise to pay therefor. If it was not so done, then the obligation to pay is not strengthened by a new promise to pay. A supplementary contract, in this instance, could have no effect, and was not required.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed on the law and facts and new trial granted, with costs to the appellant to abide the event. The court disapproves of finding of fact No. 9.