FLOYD F. SORRENTINO, Respondent, *v.* STATE OF NEW YORK, Appellant. (Claim No. 34905.)

Third Department, March 21, 1961.

6

*Louis J. Lefkowitz, Attorney-General* (*Jean M. Coon* and *Paxton Blair* of counsel), for appellant.

*McClung, Peters & Simon* (*William J. Murphy* of counsel), for respondent.

*Per Curiam.* The State appeals from a judgment of the Court of Claims for the balance found due under a contract for the removal and reinterment of human remains from a cemetery within the right of way of a projected highway.

The basic issue is whether the contract requires the payment of a unit price of $44.98 for the " complete transfer of each body ", regardless of number, in accordance with claimant's proposal—on which basis the trial court found the amount earned under the contract to be $125,198; or whether claimant is entitled to no more than the gross sum of $6,000 provided by the contract proper. If the unit price basis is the correct one, the parties' dispute as to the number of units removed which actually constituted " human remains ", within the meaning of the contract, must be determined.

In awarding contracts under the Highway Law, the lowest bid is to be " determined by the superintendent on the basis of the gross sum for which the entire work will be performed, arrived at by a correct computation of all the items specified in the estimate therefor at the unit prices contained in the bid." (Highway Law, § 38, subd. 3.) In the preparation of the contract in this case there could be no actual " computation " because the number of " items " to which the unit price would apply was not known and no number was specified; no estimates were disclosed, if any were made; and apparently the parties never attempted to reach a common ground of understanding, upon consideration of the quantitative factor. Thus, claimant testified that he estimated the number of graves at 4,000 (but did not so advise the State), but whether or not the $6,000 price set forth in the contract reflects any estimate by the State, it would, after deduction of plot and monument costs fixed at

$1,900, represent the cost of removal of but 91 bodies at the stipulated unit price. As against these figures, claimant contends that 2,839 units were removed by him and an additional number by a contractor under a contract made after the State terminated claimant's contract, while the State itself concedes 1,171 removals of actual human remains by claimant alone. The situation was doubtless complicated as respected the basis for bids or estimates by reason of the fact that the cemetery was over 100 years old and no interments had been made in it for over 50 years; and because its existence was apparently unknown to the Department of Public Works until a number of graves were uncovered after the highway construction had actually begun, with the result that immediate action with reference to the cemetery became necessary. It is evident that the State's lack of information as to number prompted the Department of Public Works' interoffice communication, some three weeks prior to the date of the contract, in which the Director of the Bureau of Contracts and Accounts was advised as follows: " Inasmuch as the number of bodies located on the above parcel cannot be ascertained, it is believed that an *arbitrary* figure of $6,000.00 be made to cover all of the conditions of the specifications herein, and it is further recommended that the performance bond be in a sum of not less than $6,000.00." (Emphasis supplied.) (The competency of this proof will appear.) If the figure was in fact " arbitrary ",· its insertion in the contract is the strongest evidence that it was intended as *pro forma* compliance with section 38, quoted above, and as nothing more.

Against this background, we examine the contract documents. The notice to contractors that bids would be received stated nothing as to the number of units and while it announced that each proposal should " state the correct gross sum " it also required that the proposal be made upon the blank form provided therefor, upon which the blank spaces must be filled in and no change or any alteration or addition made; but the form thus provided, and which claimant properly completed, made provision only for insertion of the unit price bid and none for any gross price or any statement or estimate of items or number. In the contract proper, subsequently executed, the submission of proposals " for removal of all human remains " from the burial ground was recited and the contractor agreed to " furnish the service required in connection with the above-mentioned items " (not particularized beyond the words " removal of all human remains "), " in accordance with all the conditions and covenants contained in the Proposal and

Specifications ", which were expressly incorporated in the contract by reference, for which the State agreed to pay the sum of $6,000, "*in accordance with Paragraph 1 of the said proposal*" [emphasis supplied], which paragraph 1 contained claimant's bid

> For a complete transfer of each body, including all phases of the work, labor, materials and equipment outlined in subdiv. 2.3 hereof,
> the sum of ___Forty Four 98/100___ Dollars ($44.98), per body, to be paid by the State.

The surrounding circumstances and the extrinsic proof, which have been outlined above and to which, under familiar principles, we must look to resolve the otherwise irreconcilable conflict and obvious ambiguity, point clearly to the intent that the unit price, without limit to the number of units, should constitute the consideration to be paid. That the provision in section 38 for a " gross sum " effective for all purposes is not sacrosanct has been recognized by this court upon construing a contract in which the gross figures would probably not be termed " arbitrary " (as the Department of Public Works memorandum above alluded to described the figure in this case) and it was held that " the State's promise to pay was not the gross sum bid, but the quantities actually furnished multiplied by unit prices." (*Kent Constr. Co.* v. *State of New York,* 212 App. Div. 197, 202, per KELLOGG, J.) We note, although it is not necessary to our decision, that the subsequent acts of the parties with reference to the contract supported, and were consistent only with, the construction at which we have arrived.

The computation of claimant's damages must rest upon proper definition of the term " human remains ", as used throughout the contract documents, sometimes interchangeably with the word " body ". · The problem is best pointed up by a description of the removal process employed by claimant. From each space which he considered to be a grave he removed material which he placed in an individual, numbered box. In many cases the graves contained remains, consisting of bones or pieces and particles of bone, which were readily identifiable as those of a human being. In other graves — and these are referred to in the testimony as " moral graves " — there was, as appears from claimant's testimony upon direct examination, " no visible bone " but there were found sections or areas of earth of a color different from that of the surrounding soil and claimant in each instance removed from each supposed moral grave and placed in an individual box these portions of earth,

which he concluded had been discolored by the products of the decomposition of a human body. These boxes are among the 2,839 boxes containing supposed units in that number, for which claimant seeks payment at the unit price. In denominating the material removed from the moral graves as human remains, claimant relies greatly on opinions attributed to a priest who at times observed the work, but in point of fact the opinion evidence cited is largely hearsay, being found in the testimony of claimant and others as to what the priest said, and the one bit of the priest's direct testimony which is cited seems, in context, to be inconclusive, even if it could be assumed, absent any proof, that the witness possessed the expert scientific knowledge which in this instance the inquiry seemed to require. The witness himself, whose testimony was at all times completely reasonable and candid, placed the matter in proper perspective when he said, " after all, I was only of an opinion, and I couldn't state that this was a grave or wasn't, but I felt it was, in my opinion." The Court of Claims found that he was an " arbiter " of some sort whose " interpretation binds the parties " (which function, incidentally, he disclaimed), but of course, there exists no authority in law or in fact for the trial court's theory in this respect and respondent does not attempt to support it; but does treat the priest's testimony as expert. It seems to us evident from the record, however, that he did not intend to, and did not, give expert opinion evidence, in the legal sense, either as an ecclesiastical authority or in the field of pathology.

The " supplemental agreement " to which the decision below gave recognition as modifying the original contract, and to which the court resorted in computing damages, was not approved by the Comptroller or the Director of the Budget (State Finance Law, § 112, subd. 2; Highway Law, § 38, subd. 9) and never became effective, and there is no claim by anyone that it did.

The State contends, and correctly in our view, that the contract provisions for the removal of " human remains " and for the payment for a transfer " of each body " at a specified amount " per body " require, in reason and of necessity, the existence of some visible and identifiable portion of a human body, apart from the soil into which it may have disintegrated or the fittings of the casket in which it may have been enclosed. The word " body " as employed in the contract serves further to define " human remains " and to suggest a corporeal or tangible entity. Although we find no case directly in point, there is respectable authority pointing in this same direction. (*Wilson* v. *Read,* 74 N. H. 322; *Carter* v. *City of Zanesville,* 59 Ohio St. 170.)

The State concedes that the remains of 1,171 bodies were removed and reinterred, basing its concession on an investigation by employees of the State Department of Health and the notes of the employees of the Department of Public Works present on the work site as observers. We find that claimant failed to sustain the burden of proving any greater number. The testimony of the chemist who testified for claimant is generally unsatisfactory and entitled to little probative force. Of course, the conclusion which we have reached as to the test imposed by the contract renders irrelevant, in any event, his chemical and miscroscopic analyses of material in which no evidence of bone appeared on gross visual inspection.

The judgment should be modified, on the law and the facts, by reducing the award to $46,989.24 (being $52,671.58 less $5,682.34 payment), and interest, and, as so modified, affirmed, without costs.

BERGAN, P. J., COON, GIBSON, HERLIHY and REYNOLDS, JJ., concur.

Judgment modified, on the law and the facts, by reducing the award to $46,989.24 and interest, and, as so modified, affirmed, without costs. Settle order.