Alaei v State of New York (2025 NY Slip Op 00004)

Alaei v State of New York

2025 NY Slip Op 00004

Decided on January 2, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 2, 2025

CV-23-1149
[*1]Kamiar Alaei, Appellant,
v
State of New York, Respondent.

Calendar Date:November 13, 2024

Before:Aarons, J.P., Pritzker, Ceresia, McShan and Mackey, JJ.

Young/Sommer LLC, Albany (Joseph F. Castiglione of counsel), for appellant.
Letitia James, Attorney General, Albany (Beezly J. Kiernan of counsel), for respondent.

Mackey, J.
Appeal from a judgment of the Court of Claims (Frank P. Milano, J.), entered June 6, 2023, upon a decision of the court in favor of defendant.
In 2014, claimant accepted an appointment with the State University of New York at Albany (hereinafter SUNYA) as an associate professor and lecturer in the Department of Public Administration and Policy, Rockefeller College of Public Affairs and Policy. The initial appointment was for three years, beginning in 2014, but the contract provided that, "[t]o give [claimant] the security of at least two years of employment, the appointment will be reviewed annually for possible extension by another year" (emphasis added). Claimant was also notified that, as a nontenured professor, he would be represented by the United University Professions union (hereinafter UUP), which had a collective bargaining agreement (hereinafter CBA) with SUNYA. During his employment, claimant's appointment was renewed twice, in 2016 and 2017, to ultimately extend his term through the 2018-2019 academic year. Over that time, claimant's annual salary was also increased from $92,630 to $130,000.
In February 2018, SUNYA notified claimant by letter that it had opened a disciplinary investigation of him and that, effective immediately, he would be required to work from home on an "alternate assignment." SUNYA further instructed claimant that he was prohibited from communicating with any current or former SUNYA students or employees, without written approval. The alternative assignment letter referenced section 19.10 (c) of the CBA, which provided that an "alternative assignment shall not be regarded as discipline." Upon receiving it, claimant refused to sign the letter, but immediately ceased work on his research projects and grant requests, missed scheduled events and remained home. Subsequently, SUNYA removed claimant's card and key access to SUNYA facilities and blocked him from using his SUNYA email account. Claimant was further removed as Director of the Global Institute for Health and Human Rights, an organization at SUNYA that claimant and his brother had founded. The disciplinary investigation looked into allegations that claimant, while attending an overseas conference, had engaged in unwelcome sexual conduct with a SUNYA student. Upon conclusion of the investigation, SUNYA recommended that claimant attend a Title IX training session, but declined to file disciplinary charges against him. Nevertheless, in August 2018, SUNYA informed claimant that it would not be renewing his employment and that, pursuant to the CBA, SUNYA would terminate claimant effective immediately and pay out the remainder of his term, a one-year salary.
As a response to claimant's alternative assignment, UUP filed a grievance against SUNYA, alleging improper disciplinary action. Thereafter, UUP notified SUNYA of its intent to proceed to arbitration, but UUP later agreed to withdraw the grievance in exchange for SUNYA reaffirming its obligations under article [*2]19 of the CBA. Claimant subsequently filed a verified notice of claim against defendant alleging, among other things, that SUNYA breached the UUP agreement and contract with claimant, wrongfully terminated him and caused significant damage to his professional reputation and credibility. Following a three-day nonjury trial, the Court of Claims issued a judgment in favor of defendant, dismissing the claim, and claimant appeals.
We affirm. When conducting a review "of a nonjury trial verdict, this Court . . . independently review[s] the probative weight of the evidence, together with the reasonable inferences that may be drawn therefrom, and grant[s] the judgment warranted by the record while according due deference to the trial court's factual findings and credibility determinations" (Orser v Wholesale Fuel Distribs. CT, LLC, 173 AD3d 1519, 1520 [3d Dept 2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 909 [2020]; accord Ampower-US, LLC v WEG Transformers USA, LLC, 214 AD3d 1129, 1130 [3d Dept 2023]). "To establish a cause of action for breach of contract, a party must establish the existence of a contract, the party's own performance under the contract, the other party's breach of its contractual obligations, and damages resulting from the breach" (Radiation Oncology Servs. of Cent. N.Y., P.C. v Our Lady of Lourdes Mem. Hosp., Inc., 221 AD3d 1324, 1326 [3d Dept 2023] [internal quotation marks, brackets and citations omitted]; see State of New York v Industrial Site Servs., Inc., 52 AD3d 1153, 1161 [3d Dept 2008]). "A party contracting with [defendant] is chargeable with knowledge of the statutes which regulate its contracting powers and is bound by them" (Parsa v State of New York, 64 NY2d 143, 147 [1984] [citation omitted]; see 3 Del. Group LLC v Broome County, 167 AD3d 1117, 1119 [3d Dept 2018]). When "a state agency contracts for value exceeding [$50,000], the contract is not enforceable until approved by the Comptroller" (Charlie's at the Fair, LLC v State of New York, 135 AD3d 1042, 1043 [3d Dept 2016], citing State Finance Law § 112 [3]). "The statute's purpose is to protect the public from governmental misconduct and improvidence" (City of New York v State of New York, 87 NY2d 982, 985 [1996] [citation omitted]; accord Hamlin Beach Camping, Catering, & Concessions Corp. v State of New York, 303 AD2d 849, 852 [3d Dept 2003]).
A collective bargaining agreement is an exception to the requirement for Comptroller approval (see State Finance Law § 112 [4]; Civil Service Law § 204), but supplemental undertakings that are "totally distinct from the terms and conditions" of the collective bargaining agreement must be approved by the Comptroller (Wright v Cayan, 642 F Supp 947, 952 [ND NY 1986], affd 817 F2d 999 [2d Cir 1987], cert denied 484 US 853 [1987]; see Sorrentino v State of New York, 13 AD2d 5, 9 [3d Dept 1961], affd 11 NY2d 695 [1962]). Further, "[i]t is well settled that, when an employer and a union enter into a [*3]collective bargaining agreement that creates a grievance procedure, an employee subject to the agreement may not sue the employer directly for breach of that agreement but must proceed, through the union, in accordance with the contract" (Armstrong v Town of Tonawanda, 214 AD3d 1304, 1304-1305 [4th Dept 2023] [internal quotation marks and citation omitted]; see Altman v Rossi, 107 AD3d 1223, 1223 [3d Dept 2013]; Goosley v Binghamton City School Dist. Bd. of Educ., 101 AD2d 942, 943 [3d Dept 1984]). "Exceptions include where the collective bargaining agreement grants an employee a right to sue directly or where the union fails in its duty of fair representation" (Altman v Rossi, 107 AD3d at 1223 [citations omitted]; see Matter of Cummings v Board of Educ. of Sharon Springs Cent. School Dist., 60 AD3d 1138, 1140 [3d Dept 2009]).
The Court of Claims correctly determined that claimant was barred from asserting any provisions of the appointment letter, as it was not signed by the Comptroller. Claimant is seeking to enforce the terms of his appointment letter as an agreement supplemental to the CBA, rendering it subject to the approval requirements of State Finance Law § 112. Because the appointment letter was for a salary of more than $50,000, but was not approved by the Comptroller, it is null and void (see Charlie's at the Fair, LLC v State of New York, 135 AD3d at 1043; Campbell v State of New York, 158 AD2d 937, 937 [4th Dept 1990], lv denied 75 NY2d 710 [1990]; Schenker v State of New York, 126 Misc 2d 1038, 1041 [Ct Cl 1984]; Wright v Cayan, 642 F Supp at 952).[FN1] Given that the CBA required only one year notice prior to nonrenewal, SUNYA acted in accordance with the CBA when it terminated claimant with one year's notice. Because claimant did not have a valid contract requiring more than one year's notice, the court correctly dismissed the causes of action for breach of contract and wrongful termination.[FN2]
Likewise, the Court of Claims properly dismissed claimant's cause of action for defamation, as SUNYA neither published any untruthful statements about him (see Reus v ETC Hous. Corp., 203 AD3d 1281, 1284-1285 [3d Dept 2022], lv dismissed, 39 NY3d 1059 [2023]), nor made any statements that could be read as defamatory by implication. Statements to the effect that there was an "ongoing investigation" of claimant cannot be considered defamatory, as "a reasonable [person] would understand the statements defendant made about [claimant] as mere allegations to be investigated rather than as facts"(Brian v Richardson, 87 NY2d 46, 53 [1995]; see Akpinar v Moran, 83 AD3d 458, 459 [1st Dept 2011], lv denied 17 NY3d 707 [2011]). Claimant's remaining contentions have been considered and found to be without merit.
Aarons, J.P., Pritzker, Ceresia and McShan, JJ., concur.
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1: Since the appointment letter is rendered null and void, claimant's contention that the language is ambiguous is rendered academic.
Footnote 2: Claimant is also barred from seeking relief in this lawsuit for breach of the CBA. Pursuant to article 7 of the CBA, to advance such a cause of action claimant was required to file a grievance through UUP. That was a necessary step, as the CBA contained a broad arbitration clause that covers any "inconsistency or conflict" between the CBA and SUNYA's policy. Claimant's claim seeking to enforce the provisions of his appointment letter, if valid and incorporated into the UUP Agreement, would have arisen under that Agreement and would be subject to the arbitration terms set forth in the CBA (see Matter of Board of Educ. of the Hudson City Sch. Dist. [Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO, Columbia County, Local 811, Hudson City Sch. Dist. Aides Unit], 174 AD3d 1112, 1114 [3d Dept 2019]; Cummings v Bd. of Educ. of Sharon Springs Cent. School Dist., 60 AD3d at 1140).