(May 26, 1987)

■ CITY OF NEW YORK, Respondent-Appellant, v STATE OF NEW YORK, Appellant-Respondent. (Claims Nos. 70168 and 66669.)—Order of the Court of Claims, New York County (Adolph C. Orlando, J.), entered March 5, 1986, which denied the joint motion of defendant the State of New York and claimant the City of New York for a further extension of time to file appraisal reports, and set claims Nos. 66669 and 70168 down for trial on March 17, 1986, reversed, on the law and the facts and in the exercise of discretion, the motion is granted, and the matter is remanded to set a new date for the filing of reports and for trial, without costs.

The issue presented on this appeal is whether the Court of Claims abused its discretion by ordering the municipal claimant and the State defendant to proceed to trial on these eminent domain claims stemming from the aborted Westway Highway Project, undisputedly the largest claims in the history of the State and, perhaps, the Nation. On September 11, 1981 and February 6, 1982, the State of New York (the State) appropriated approximately 300 acres of land consisting of

upland and underwater land, piers, and other facilities from the City of New York (the City) for the proposed Westway Highway Project (Westway). On May 19, 1982, the City filed a claim (claim No. 66669) for the property appropriated, except for the Gansevoort Incinerator Plant and Marine Transfer Station and the Manhattan and Bronx Transfer Operating Authority Bus Garage. Although the City notified the State Department of Transportation that it was exercising its right to elect to receive functional replacements for the aforementioned facilities, on November 19, 1984, the City filed an additional claim (claim No. 70168) in an amount in excess of $95,000,000 to protect its right to be compensated whether by functional replacement or otherwise.

The design of the Westway Highway Project involved the construction of an interstate highway along the west side of Manhattan Island, portions of which would be built upon a landfill which was to be placed in and along the shoreline of the Hudson River. Opponents of the project, concerned chiefly about its environmental impact, commenced litigation in Federal court which continued for approximately four years. The City and the State ultimately determined that construction of the project was not feasible before the statutory deadline expired for obtaining the Federal moneys earmarked for the project and, on September 25, 1985, elected to "trade-in" the project for the set-aside Federal moneys which would be used to improve other highways and various other public transportation facilities.

Until January 16, 1986, the presiding Judge and later the Judge assigned to handle the trial in the Court of Claims granted four extensions of time with respect to claim No. 66669 and two extensions of time with respect to claim No. 70168 for both parties to file appraisal reports due to the extreme difficulty of appraising the underwater lands, the protracted Westway environmental litigation, and the parties' willingness to attempt to settle the valuation claims. On January 14, 1986 the parties jointly filed a notice of motion, supporting affidavits, and a stipulation requesting a further extension of time to file appraisal reports until July 15, 1986.

The court held a conference with the parties on January 31, 1986, and another conference after a second joint motion for an extension was made on February 13, 1986. In the interim the City filed a "preliminary" appraisal report with the court on claim No. 66669, and requested an order directing the Clerk of the Court of Claims to return the report. Counsel for both parties advised the court that after the Westway project

had been abandoned, there were ongoing high-level negotiations to determine how the set-aside Federal funds would be allocated and spent, a determination that might bear significantly upon how the parties estimated the value of the appropriate properties. The State additionally maintained that adequate appraisals could not be prepared until the Federal environmental litigation had been concluded since, until then, the highest and best use for the appropriated property could not be determined. After a brief conference with counsel for the parties on February 19, 1986, the court ordered the matter to trial on March 17, 1986. The trial court thereafter directed counsel for both parties to appear for a conference, at which time he ordered the claims to trial on April 21, 1986. This court granted a stay pending hearing and determination of the appeals herein.

Section 206.21 of the Uniform Rules for the New York State Trial Courts (22 NYCRR) provides, in pertinent part:

"(b) Appraisal reports. Within six months from the date of completion of filing and service of a claim in an appropriation case, the parties shall prepare and file with the clerk of the court an original and three copies of the appraisal of each appraiser whose testimony is intended to be relied upon at trial. Each appraisal shall set forth separately the value of land and improvements, including fixtures, if any, together with the data upon which such evaluations are based, including but not limited to:

"(1) the before value and after value,

"(2) direct, consequential and total damages,

"(3) details of the appropriation,

"(4) details of comparable sales, and

"(5) other factors which will be relied upon at trial * * *

"(g) Extension of time. (1) A party requiring more time than that prescribed in subdivision (b) of this section may apply for an extension of up to six months by letter to the Presiding Judge of the court, addressed to his chambers at Albany, New York, and received not later than six months from the date of the filing and service of the claim. The letter application shall show good cause for the extension, and a copy thereof shall be forwarded by the applicant to each other party. The Presiding Judge in his discretion may, by letter, grant an extension for such period, not to exceed six months, and upon such terms and conditions as may be just. Such extension also shall extend the time of all parties for the same period.

"(2) An application for any further extension shall be made

by motion on notice showing good cause and shall be made to the assigned judge prior to the expiration of any previous extension. The court in its discretion may grant the motion upon such terms and conditions as may be just. Alternatively, a further extension may be set forth in a stipulation which shall be signed by the attorneys and submitted to the assigned judge. The court in its discretion may 'so order' said extension.

"(3) An application for other or further relief from the requirements or consequences of this section also shall be made to the assigned judge by motion on notice showing unusual and substantial circumstances. However, any application for such relief made after the commencement of trial may be granted only upon a showing of extraordinary circumstances. The court in its discretion may grant the motion upon such terms and conditions as may be just."

In reviewing the discretionary power of the trial court, this court has the power, upon its own consideration of the facts, to determine whether considerations of public policy or special circumstances justify an extension, and may substitute its own discretion for that of the trial court even in the absence of abuse. (*Brady v Ottaway Newspapers,* 63 NY2d 1031, 1032 [1984].) We conclude that, on this record, the City and the State demonstrated special circumstances which warranted the granting of their motion for a further extension of time as an exercise of discretion pursuant to section 206.21 (g) (3) of the Uniform Rules for the New York State Trial Courts (22 NYCRR). We are persuaded that the five-year delay in filing appraisal reports is justified by the sheer dimension and complexity of the claims, and by the protracted Westway litigation, which effectively precluded the City and the State from preparing adequate reports. To force the parties to trial before they have had the opportunity to prepare their evidence is tantamount to a denial of due process. (*See, Riglander v Star Co.,* 98 App Div 101, 108 [1st Dept 1904], *affd* 181 NY 531 [1905]; *Parisi v State of New York,* 62 Misc 2d 378, 382 [Ct Cl 1970].) In our view, the public interest to be served by facilitating settlement of the valuation issue in the broader context of the current Westway negotiations involving, *inter alia,* the formulation of new plans for utilization of the property appropriated for Westway, outweighs the salutary purpose almost always served by moving a case to trial expeditiously. (*See, City of New York v State of New York,* 40 NY2d 659, 670 [1976].) "Both of these powerful entities with their mutual need to cooperate on a host of fronts, financial and otherwise, should be expected to act with far more motivation to avoid litigation

whenever possible." Concur—Murphy, P. J., Sandler, Asch and Rosenberger, JJ.

Milonas, J., dissents in a memorandum as follows: In my opinion, the order being appealed herein should be affirmed.

On September 11, 1981 and February 6, 1982, defendant-appellant, the State of New York, appropriated some 300 acres of land owned by claimant, the City of New York, for the purpose of enabling the former to construct the planned Westway Highway Project. The property in question was located on the west side of Manhattan and included various piers, bulkheads and other structures, as well as the Gansevoort Incinerator Plant and Marine Transfer Station and the Manhattan and Bronx Surface Transit Operating Authority Bus Garage. The city thereafter filed two claims for relief, demanding as compensation $225,000,000 and $95,000,000 respectively. In that regard, defendant and the claimant agree that since the claims are extremely complex, the proper valuation will not be easily determined.

The design for the Westway proposal contemplated that portions of the highway be built upon landfill in and along the shoreline of the Hudson River. Litigation revolving largely around the environmental impact of the project was commenced in Federal court and continued for a period of approximately four years. After it ultimately became apparent that the project would have to be abandoned, the city and State elected to trade in Westway for the Federal funds which had been set aside for it so that the money could be expended on mass transit and other public transportation needs. However, during the time which elapsed between the appropriation of the property and the decision to accept the trade-in, both parties to this action requested that the Court of Claims grant them an extension for submitting their separate appraisal reports until the many disputed issues surrounding the plan to construct Westway could be resolved. Such extensions were, accordingly, obtained until January 15, 1986.

By notice of motion dated January 14, 1986, the city and State jointly moved for a further extension to July 15, 1986 in which to file their reports. The court refused to provide the extra time and, following a conference with the parties on January 31, 1986, found both the city and State in default and directed them to submit their appraisals by February 19, 1986. Although the city had filed a draft of its appraisal report with respect to the first of its two claims, the city subsequently asked that this draft be returned, and, on February 13, 1986, both parties again appeared before the court, importuning for

more time. The attorneys for the two sides pointed to the controversy and litigation concerning the Westway project as having created great difficulty in procuring accurate and complete appraisals. The lawyers further advised the court that negotiations were underway which might obviate the necessity for a trial. The court, however, remained unpersuaded by counsels' arguments and, on February 19, 1986, ordered that the trial begin on March 17, 1986. The instant appeal ensued with both the city and State urging that the court's ruling constituted an abuse of discretion.

In denying the parties' most recent application for an extension of time, the court stated that:

"in one of these cases, namely, claim number 66669, there have been four prior extensions of time; and in case number 70168, there have been two prior extensions of time granted.

"In sum, the proffered excuses by counsel have been that there have been extended discussions at, quote, 'high places' for the settlement of this claim; but, really, neither counsel has informed the Court when or if these discussions might be fruitful.

"Additionally, neither counsel really has given the Court a time when the Court might expect that sufficient appraisals, which are in their opinion sufficient, will be filed.

"The Court has informed the State of New York, primarily, that if their appraisal is not in, there are provisions under the Court of Claims Act, which I am sure counsel is aware of, in which he can proceed without the appraisals and file his comparables.

"Additionally, the Court is aware and counsel have also said that preliminary taking of appraisals have been made and were made prior to the taking of this property.

"The court wishes to remind counsel that all of the facilities of this Court will be made available to them for the purpose of settlement or discussion or in an effort to reach some agreement on an order framing the issues or, indeed, arriving at some understanding with respect to agreeing on a state of facts, if that is indeed possible."

It is important to note that the instant action was initiated by the submission of claims in the Court of Claims, the first of which was filed on June 7, 1982 and the second on November 19, 1984. Thus, this proceeding has now been pending in the Court of Claims for nearly five years. In all that time, little progress appears to have been made in disposing of the matter. The two parties have simply been content to petition

for a series of extensions, consuming the time and resources of the court, without providing any indication of when the case might either be settled or tried. Indeed, it is not clear that despite the passage of so many years, the parties are much closer to a resolution than when they first started. In that regard, the City and State of New York appear to have used the existence of litigation primarily as a pretext to do nothing to settle the present claims.

Another year has now come and gone since the ruling being appealed here was handed down, and both parties are apparently still not ready. Their demand for time seems to be insatiable. The fact that the parties are equally satisfied to seek indefinite postponements, however, does not mean that the Court of Claims must be a willing participant to their inaction. If the city and State do not wish to dispose of this action any time in the near future, they should not be in the Court of Claims. If, on the other hand, they are sincere in their desire to reach a conclusion, there must be a limit to the number of delays granted to them.

Section 206.21 (g) of the Uniform Rules for the New York State Trial Courts (22 NYCRR) states that an application of a further extension of time shall be at the discretion of the court. The court herein set forth valid reasons for denying the parties' most recent request for yet another extension. I do not perceive any basis for this court to substitute its discretion for that of the Court of Claims Judge who has been handling this proceeding and is, therefore, presumably more familiar with it than we are. The order being appealed should be affirmed.