CITY OF NEW YORK, Respondent-Appellant, v STATE OF NEW YORK, Appellant-Respondent. (Claims Nos. 70168 and 66669.)

First Department, June 13, 1989

APPEARANCES OF COUNSEL

*Renee Modry* of counsel *(Joseph I. Lauer* and *Robert Pfeffer* with her on the brief; *Peter L. Zimroth, Corporation Counsel,* attorney), for City of New York, respondent-appellant.

*Peter J. Dooley* of counsel *(William J. Kogan* with him on the brief; *Robert Abrams, Attorney-General,* attorney), for State of New York, appellant-respondent.

## OPINION OF THE COURT

SULLIVAN, J. P.

The instant appeal addresses the issue of whether the Court of Claims properly denied a request, jointly made, for an extension of time for the filing of appraisals in two related condemnation proceedings. The parties sought the extension so as to allow them the opportunity to resolve the myriad issues underlying the two claims, which are extraordinary both in size and complexity. The subject property, located on the West Side of Manhattan, was owned by the City of New York and appropriated by the State of New York between 1981 and 1982 for the now defunct Westway Project (Westway), a proposed interstate highway. The center of an intense political and legal controversy, Westway was abandoned in September of 1985, when the city and the State elected to "trade-in" the project for the set-aside Federal moneys which would then be used to improve highways and various other public transportation facilities.

As part of the trade-in of the funds, the State and the city agreed to cooperate in resolving all the remaining matters, including the design of a West Side replacement highway, utilization of the property appropriated for Westway, the value of the property appropriated, and the respective roles of the city and State in the development and implementation of a new plan. Feasibility studies on the remaining issues were to be reviewed by a task force consisting of members jointly appointed by the Mayor and the Governor, as well as community, business, labor, environmental and transportation groups. The task force was to report to the Mayor and the Governor by the end of 1986, and make recommendations consistent with the general objectives adopted for Westway.

On May 19, 1982, the city had filed claim No. 66669 against the State for $225 million for the value of the property appropriated. On November 19, 1984, it filed claim No. 70168 in an amount in excess of $95 million to protect its right to be

compensated either by functional replacement, or otherwise, for certain appropriated property not included under claim No. 66669. Through January of 1986 the Court of Claims had granted four extensions of time with respect to claim No. 66669 and two with respect to claim No. 70168, for the purpose of allowing both parties to file appraisal reports. After two joint motions for time extensions were made in early 1986, the court ordered the claims to trial on April 21, 1986. Both parties appealed. This court granted a stay pending appeal.

While the appeals were pending, the parties jointly moved before the Court of Claims, pursuant to section 206.21 of the Uniform Rules for Trial Courts (22 NYCRR 206.21), for a further extension of six months after the time when they either agreed to a new plan for a replacement highway and utilization of the property appropriated, or reached an impasse in their negotiations. They also sought, pursuant to section 206.13 (d) of the rules, the establishment of a special calendar for these claims. The court denied the motion on January 29, 1987, finding that the parties had "failed to show the required good cause, or that any unusual or substantial circumstances exist[ed] for the Court to favorably exercise its discretion and further extend the time to file appraisals." The court did not, however, then set a new date for the filing of appraisals.

On May 26, 1987, this court reversed, granted the parties' motion for a further time extension in which to file the appraisals, and remanded the matter to set a new date for the filing of reports and for trial. *(City of New York v State of New York,* 130 AD2d 433 [Milonas, J., dissenting].) Quoted at length was section 206.21, which, addressing the procedural requirements for the filing of appraisal reports and the granting of extensions of time for such filing, provides:

"(2) An application for any further extension shall be made by motion on notice showing good cause and shall be made to the assigned judge prior to the expiration of any previous extension. The court in its discretion may grant the motion upon such terms and conditions as may be just. Alternatively, a further extension may be set forth in a stipulation which shall be signed by the attorneys and submitted to the assigned judge. The court in its discretion may 'so order' said extension.

"(3) An application for other or further relief from the requirements or consequences of this section also shall be

made to the assigned judge by motion on notice showing unusual and substantial circumstances. However, any application for such relief made after the commencement of trial may be granted only upon a showing of extraordinary circumstances. The court in its discretion may grant the motion upon such terms and conditions as may be just." *(Supra,* at 435-436.)

This court also referred to its power, in reviewing the discretionary power of the trial court, "to determine whether considerations of public policy or special circumstances justify an extension, and may substitute its own discretion for that of the trial court even in the absence of abuse." *(Supra,* 130 AD2d, at 436, citing *Brady v Ottaway Newspapers,* 63 NY2d 1031, 1032.) In concluding that the parties had demonstrated special circumstances which warranted the granting of their motion for a further extension of time as an exercise of discretion pursuant to section 206.21 (g) (3), we held: "In our view, the public interest to be served by facilitating settlement of the valuation issue in the broader context of the current Westway negotiations involving, *inter alia,* the formulation of new plans for utilization of the property appropriated for Westway, outweighs the salutary purpose almost always served by moving a case to trial expeditiously. *(See, City of New York v State of New York,* 40 NY2d 659, 670 [1976].)* 'Both of these powerful entities with their mutual need to cooperate on a host of fronts, financial and otherwise, should be expected to act with far more motivation to avoid litigation whenever possible.' " (130 AD2d, at 436-437.)

Shortly after the decision, the parties were summoned to a June 29, 1987 pretrial conference, at which they renewed their prior motion for a further extension of time to file the appraisal reports and the establishment of a special calendar for both claims. The parties also informed the court that the task force had completed its work and had submitted its recommendations to the Mayor and the Governor, who were currently reviewing them. In addition, the city reported that since the last court appearance Congress had amended the Federal Highway Act (Pub L 100-17, adding Surface Transportation and Uniform Relocation Assistance Act of 1987) so as to affect the State's obligation, in light of the trade-in, to refund some of the Federal funds advanced for Westway, a change which, both parties agreed, had a significant impact on the negotiations between them. The city also advised the court that the parties were "not far apart" in a resolution of the issues. Notwithstanding these developments and the findings

of this court in its decision published just one month earlier, the court denied renewal on July 9, 1987 and ordered the parties to file appraisal reports by July 31, 1987, and either to proceed to trial on September 21, 1987, or to withdraw the claims. The parties appeal both the January 29, and July 9, 1987 orders.

One month after the Court of Claims' July 9, 1987 determination, the Mayor and the Governor agreed to a roadway concept, and the respective agencies, including the City and State Departments of Transportation, the City Planning Commission, Department of Ports, International Trade and Commerce, and other agencies, became engaged in a cooperative effort to plan for the economic growth of a revitalized West Side, to consider how best to provide for open space and public access to the waterfront and to design a comprehensive land use plan, encompassing both public and private development, for the property and to resolve other major issues such as the intergovernmental relationship between the two parties in exercising their oversight responsibility. As part of that cooperative effort, the city and State began negotiating the city's valuation claim in the context of a settlement of the outstanding issues.

In a memorandum released in May 1988, the Mayor and the Governor agreed that the city would discontinue both claims with prejudice and without any additional payment by the State, but subject to the terms described therein, including a "50-50" partnership relationship between the city and the State as to the liabilities and assets of the property, the establishment of a "West Side Waterfront Panel" for overseeing future planning, and the approval of the City Comptroller. According to press releases, the Comptroller estimated the fair value of the property, originally intended as a site for housing and commercial construction, at approximately $200 million. The State contended that the $90 million it originally paid to the city for the appropriated property was reasonable because the improvements would not be built. (See, Poor Little Westway, New York Times, Feb. 14, 1989.)

On January 16, 1989, however, the Governor informed the Mayor that the State would not continue to implement the 1988 memorandum in view of the City Comptroller's refusal to approve the settlement, which refusal, we are told, is based on certain technical issues. The planning activity of the panel was suspended on the grounds that, given the pending claims litigation, such activity was contrary to the State's interests.

The issue presented here is substantially similar to that presented on the earlier appeal, namely, whether the Court of Claims abused its discretion in ordering the city and the State to proceed to trial on these two eminent domain claims, previously characterized by this court as "undisputedly the largest claims in the history of the State and, perhaps, the Nation." *(Supra,* 130 AD2d, at 433.) As we noted, "[T]he five-year delay in filing appraisal reports is justified by the sheer dimension and complexity of the claims". *(Supra,* at 436.)

From the outset, these claims have been distinguishable from other appropriation claims in that the interests of the parties, both governmental entities, are not truly adverse. The city has a continuing vital interest in the ultimate use of the property appropriated and in the ongoing negotiations concerning such use. To that end, both the city and the State have been cooperating in the planning of a public highway facility and the development of the appurtenant waterfront. They have been restricted in their efforts by limitations on the usage and availability of Federal funding. Unlike other appropriation cases, these claims were brought in the first instance to protect the city's interests, not because the parties had reached an irreconcilable impasse in their settlement negotiations.

Clearly, the design and implementation of a new replacement highway and development of a comprehensive land use plan in a densely populated urban area are massive undertakings. Indeed, we recognized this special circumstance and the magnitude of the undertaking in the earlier appeal. The parties have already agreed to a replacement highway plan and must now reach an agreement on a plan for the development of the entire project. The value of the subject property is a major consideration in that over-all cooperative planning effort.

Furthermore, this condemnation does not involve the traditional type of appraisal since major portions of the subject property are under water, stretching from 34th Street to Battery Park City. Consequently, the appraisers do not have the benefit of comparable sales figures to guide them. Suggested appraisal formulas for determining land values are based on the ultimate method of development—whether by landfill, platform suspended over the water or some other methodology. Consequently, before any appraisal can be made, the feasibility of the particular method of planned development must be considered and determined.

We note that, in a relatively short time, the parties have made substantial progress towards resolution of the complex issues arising from the trade-in. With respect to several damage parcels under claim No. 70168, the city has elected to accept functional replacement for the facilities involved. Since the earlier appeal, feasibility studies of four alternatives for a replacement highway have been completed and a task force composed of city and State public officials has been appointed to review the alternatives and to make recommendations, which it has done, to the Mayor and the Governor. In August 1987, the Mayor and the Governor approved a roadway concept and their representatives have been meeting to resolve the other outstanding issues. In this connection, it should be noted that it took over 10 years to develop the plans and designs for Westway. Here, the parties have approved a roadway concept in less than two years after the trade-in, and are working diligently to resolve the other issues without the necessity of further litigation. Finally, in their respective briefs to this court, both sides recognize that they are close to resolution of the issues ordered to trial.

In view of this court's findings on the prior appeal, the subsequent progress made by the parties to resolve the complex issues, and the fact that the Court of Claims, virtually ignoring our determination, sought to impose time constraints on the parties just one month after this court's decision and at a time when the new plans for a replacement highway were being considered, we find that it was an abuse of discretion to deny the parties' motions for a further extension. In any event, even in the absence of a finding of such an abuse, this court has the power to substitute its discretion for that of the trial court. *(City of New York v State of New York,* 130 AD2d 433, *supra; Brady v Ottaway Newspapers,* 63 NY2d 1031, *supra.)*

Section 206.21 (g) (2) and (3) of the Uniform Rules for Trial Courts expressly permits time extensions which might otherwise be deemed excessive, where there is good cause or unusual and substantial circumstances. The record here not only supports the need for such relief but demonstrates, as well, the continuing efficacy of the observation of the Court of Appeals in *City of New York v State of New York* (40 NY2d 659), and of this court in the prior appeal, that the public interest is served when the city and the State cooperate to avoid litigation. Moreover, the laudable goal of appropriate case management may be secured by placing the claims on a

special calendar as provided in section 206.13 (d) of the Uniform Rules.

Accordingly, the orders of the Court of Claims, New York County (Adolph C. Orlando, J.), entered January 29, 1987 and July 9, 1987, which, *inter alia*, denied the joint motion of defendant, the State of New York, and claimant, the City of New York, for a further extension of time to file appraisal reports pursuant to 22 NYCRR 206.21 (g) (2) and (3), should be reversed, on the law and on the facts, and in the exercise of discretion, without costs or disbursements, the motion granted, and the matter remanded for further proceedings not inconsistent herewith.

MILONAS, J. (dissenting). It is seven years since the first claim in this matter was filed with the Court of Claims. When the instant case was previously before this court (130 AD2d 433)*, I noted in my dissent that (at 439):

"Another year has now come and gone since the ruling being appealed here was handed down, and both parties are apparently still not ready. Their demand for time seems to be insatiable. The fact that the parties are equally satisfied to seek indefinite postponements, however, does not mean that the Court of Claims must be a willing participant to their inaction. If the city and State do not wish to dispose of this action any time in the near future, they should not be in the Court of Claims. If, on the other hand, they are sincere in their desire to reach a conclusion, there must be a limit to the number of delays granted to them.

"Section 206.21 (g) of the Uniform Rules for the New York State Trial Courts (22 NYCRR) states that an application [for] a further extension of time shall be at the discretion of the court. The court herein set forth valid reasons for denying the parties' most recent request for yet another extension. I do not perceive any basis for this court to substitute its discretion for that of the Court of Claims Judge who has been handling this proceeding and is, therefore, presumably more familiar with it than we are. The order being appealed should be affirmed."

Two more years have now elapsed, and the city and State of New York appear no closer to a resolution of their dispute than ever before. Indeed, a recent tentative settlement was aborted by the Governor after the Comptroller of the City of

---

* Due to inadvertence, this court's order omitted that Presiding Justice Murphy joined in the dissent.

New York refused to approve the agreement. I anticipate that sometime in the future we will again be confronted with the two parties jointly seeking an additional delay. As the parties continue to urge that the public interest mandates that the city and State be permitted an indefinite amount of time in which to resolve the complex issues involved herein and that, at any rate, an agreement is near, the Court of Claims is being held hostage to the open-ended schedule of the litigants. Indeed, contrary to the parties' assertion, the public interest requires an expeditious disposition of this matter rather than a resolution taking 10 or more years. It is an abuse of the court process to commence a lawsuit and then allow it to languish because politicians are unable to agree.

In my opinion, the Court of Claims Judge hearing this proceeding should be permitted to control his own calendar and not be dictated to by the parties. After seven years, the city and State of New York should either be prepared to go to trial or stipulate to withdraw the action from the court calendar. In that regard, the Court of Claims has observed that the parties' counsel "have not indicated that there is a remote chance the case will be disposed of without the necessity of a full trial." Despite repeated representations of imminent settlement, there is no evidence whatever of an agreement between the city and State in the foreseeable future. Under the circumstances of this protracted proceeding, the Court of Claims appropriately directed that the trial finally begin.

CARRO and KASSAL, JJ., concur with SULLIVAN, J. P.; MILONAS and ELLERIN, JJ., dissent in an opinion by MILONAS, J.

Orders, Court of Claims, New York County, entered on January 29, 1987 and July 9, 1987, respectively, reversed, on the law and on the facts, and in the exercise of discretion, without costs and without disbursements, the motion granted, and the matter remanded for further proceedings not inconsistent with the court's opinion.