OPINION OF THE COURT
Edwin Margolis, J.
This is a motion brought pursuant to section 10 (6) of the Court of Claims Act for permission to file an untimely claim. The proposed claim alleges that for the years 1985, 1986, 1987 and 1988 the Office of Mental Health (OMH) wrongfully incorporated a minimum occupancy factor into its computation of the Medicaid reimbursement rate for claimant. Claimant estimates that the adverse impact of the rate calculation over the four years in question has been in excess of $500,000.
Inclusion of the minimum occupancy factor[1] into the calculation for fixing Medicaid reimbursement rates was estab *708 lished by a State regulation, 14 NYCRR 577.7 (g), which became effective for the first time for fiscal year 1985. This factor was included in the State Plan for Medical Assistance (State Plan), which was filed with the Secretary of the United States Department of Health and Human Services (HSS). Claimant has instituted a Federal action for declaratory judgment and recovery of the moneys withheld by implementation of the minimum occupancy factor (Rye Psychiatric Hosp. Center v Surles, US Dist Ct, SD NY, 88 Civ 5922 [GLG]). The basis for that action is claimant’s contention that the State regulation, insofar as it authorizes inclusion of the minimum occupancy factor, violates a governing Federal statute, 42 USC § 1396a (a) (13) (A) (United States Social Security Act tit XIX).[2]
The State officials who are named as defendants in the Federal action have raised, as an affirmative defense, the US Constitution’s Eleventh Amendment bar to monetary recovery against a State in Federal court. Although claimant intends to challenge this defense, the instant motion is being made to protect its right to recover money damages from the State in the event that it is successful in the over-all Federal litigation but unsuccessful in challenging the affirmative defense. Thus, the action which claimant seeks to institute in this court does not raise the underlying issue of the regulation’s validity but is directed merely at recovery of the sums withheld through use of the minimum occupancy factor if and when the regulation is invalidated by the Federal court.
Counsel for claimant continually and incorrectly refers to its motion as one for permission to file a late "notice of claim”, making it clear that he intends merely to reserve his right to commence an action in this court if it is necessary, and possible, to do so at the conclusion of the Federal litigation. There is no document entitled "notice of claim” recognized or authorized by the Court of Claims Act. A "notice of intention to file a claim”, which is authorized by the Act, would act to preserve the claimant’s right to formally institute an action at a somewhat later date, however it appears that claimant’s time for filing a notice of intention has passed.[3] Section 10 (6) authorizes only the belated filing of a *709 "claim”, the document which formally commences an action in this court.
Defendant asserts that, pursuant to section 9 (2) of the Court of Claims Act, this court has jurisdiction to hear and determine only causes of action premised on tort, contract, and appropriation of realty by the State[4] and that this action, where the demand for money damages is premised on the alleged invalidity of a State regulation, does not fall within these categories. In fact, both counsel have assumed that the dispute about claimant’s underlying right to recover (i.e., whether inclusion of the minimum occupancy factor violates the governing Federal statute) cannot be adjudicated by this court but must be decided either in a CPLR article 78 proceeding, an action for declaratory judgment in State Supreme Court, or — as claimant has chosen — an action for declaratory judgment in Federal court.
This view is not correct. The jurisdiction of this court encompasses actions based on statutory rights (see, St. Paul Fire & Mar. Ins. Co. v State of New York, 99 Misc 2d 140, 148-156) and other claims which do not fit into the classic concepts of "tort” or "contract”. In Parsa v State of New York (64 NY2d 143), the Court of Appeals held that the Court of Claims would have jurisdiction to hear a properly pleaded claim for reimbursement of Medicare moneys withheld by the State in alleged violation of a governing Federal statute. In Parsa, the claim had been brought by a physician who provided services to Medicare patients through the Downstate Medical Center and alleged that he had not been paid the amount to which he was entitled under the governing Federal statute, which required that reimbursement for such services be the lesser of *710 " 'reasonable cost’ ” or " 'customary charges’ ” (supra, at 150).
According to the Court of Appeals, the cause of action is one for money had and received, which it described as arising from "a contract implied in law”. "Although the action is recognized as an action in implied contract, the name is something of a misnomer because it is not an action founded on contract at all; it is an obligation which the law creates in the absence of agreement when one party possesses money that in equity and good conscience he ought not to retain and that belongs to another (Miller v Schloss, 218 NY 400, 406407)” (Parsa v State of New York, supra, 64 NY2d, at 148). An action for money had and received, therefore, lies within the jurisdiction of this court pursuant to that portion of section 9 (2) of the Court of Claims Act authorizing the court to hear and determine claims based on " 'breach of contract, express or implied’ ” (64 NY2d, at 149).
The claim in Parsa (supra) was ultimately dismissed on the ground that, in that case, the physician claimant was not a Medicare "provider” and thus not personally entitled to payment under the Federal statute. "[Wjhatever sums are paid over by the Federal Government, are payments to the hospital for services it supplied to the patients. * * * [T]he statute * * * does not set aside fees which the physician is entitled to receive as a matter of law.” (64 NY2d, at 151.) In contrast, Rye Psychiatric Hospital, the party bringing the instant motion, is the provider hospital, is directly entitled to receive reimbursement, and has standing to institute an action for money had and received in this court.
In a more recent Cburt of Claims case dealing with an action for money had and received, 405 Co. v State of New York (118 Misc 2d 305), claimants who had paid money pursuant to a taxing statute that was subsequently repealed, retroactive to its effective date, were held to be entitled to a refund of the moneys they had paid pursuant to that provision of the Tax Law.
A number of other decisions have recognized that where an individual or corporation’s right to obtain money damages against the State rests directly on the legal correctness of a State statute, regulation or administrative action, this court has the power to both adjudicate the underlying right and— should the claimant prevail on that issue — award money damages. (See, Travelers Indent. Co. v State of New York, 33 *711 AD2d 127, affd 28 NY2d 561; China City Corp. v State of New York, 51 Misc 2d 429.)
Pursuant to Guaranty Trust Co. v State of New York (299 NY 295, rearg denied 300 NY 498), the cause of action in these cases accrues at the point that the moneys which claimant seeks to recover are either withheld by or paid to the State. In Guaranty Trust, the claimant had paid, during 1939, unemployment insurance contributions pursuant to a statute which was invalidated by the Court of Appeals in March 1944. Immediately after the Court of Appeals decision, claimant applied to the State Department of Labor for a refund and, shortly thereafter, instituted an action in the Court of Claims.[5] The claim was dismissed as untimely since the Court of Appeals held that the cause of action had accrued at the time of the 1939 payments and claimant had not complied with the applicable time limitation (Court of Claims Act § 10 [4]).
More recently, in Citibank v State of New York (103 Misc 2d 348, 350-351), a motion for permission to file claims seeking recovery of taxes paid pursuant to another subsequently invalidated statute was denied, on the authority of Guaranty Trust (supra), because the cause of action had accrued when the taxes were paid, not when the taxing statute was subsequently stricken.[6] The Judge who decided Citibank recognized that this rule of accrual poses significant problems for litigants who possess these types of claims, and he suggested that the claimants should have either refused to pay the taxes, subsequently moving to set aside the delinquency assessment or brought simultaneous actions in Supreme Court and the Court of Claims, having the latter placed on the Reserve Calendar. As Parsa (64 NY2d 143, supra) and the instant motion illustrate, not all situations within this category can be handled by refusing to pay money to the State. In addition, the Court of *712 Claims no longer has a Reserve Calendar, although in certain unusual situations extended adjournments may be proper (see, City of New York v State of New York, 148 AD2d 289). We respectfully differ, however, with the implicit view of the trial court in Citibank (supra) that the Court of Claims should routinely abstain from addressing the underlying substantive issue, allowing it to be determined in the other forum. As discussed elsewhere, the Court of Appeals has held that this court has full jurisdiction to decide such issues.
This court has jurisdiction to hear and determine both the underlying dispute regarding the validity of the regulation which has allegedly caused the State to wrongfully withhold moneys due to claimant and, if claimant is successful on that issue, to award claimant restitution of those moneys. With respect to fiscal year 1985, it appears that permission to file an untimely claim is required[7] and a proper motion would not be barred by the applicable Statute of Limitations (CPLR 213 [2]). With respect to fiscal years 1986, 1987 and 1988, claims or notices of intention may be filed within six months of the date on which moneys due for those years are formally withheld.
The instant motion, however, does not seek permission to file a proposed claim for 1985 which would place both of these issues before this court; claimant is asking only for the court to award damages if and when the underlying right to recover is established in another forum. We are aware of no authority for allowing such an action to be brought.
In a roughly analogous situation, permission was sought to file a claim to recover damages arising from an allegedly wrongful denial of the claimant’s liquor license. (Speare v State of New York, 42 Misc 2d 304.) Because the underlying correctness of the license denial was, at the time of the motion, the subject of an article 78 proceeding then on appeal, the motion was denied (supra, at 307) "without prejudice to the filing of a claim within 90 days of the date of entry of judgment based on a final, favorable determination in claimant’s pending proceeding.” The claimant did file a subsequent claim, which was dismissed on other grounds. In affirming that dismissal, however, the Third Department seriously questioned the propriety of the Court of Claims’ earlier ruling. (Speare v State of New York, 29 AD2d 902, lv denied 22 NY2d 644.)
There is undeniable appeal to the position implicitly taken *713 in the first Speare decision — that a cause of action in this court accrues when another forum declares the State’s action (which caused the loss) to have been wrongful but does not, for whatever reason, grant consequential monetary damages. We cannot find any persuasive authority to support that position, however, and cannot overlook the rule of accrual set out in Guaranty Trust (299 NY 295, supra).
Consequently, we hold that the instant proposed claim fails to state a cause of action in that it seeks only the award of money damages without seeking determination of the underlying right to recover from the State. The motion is denied on that basis, without prejudice to claimant’s right to move for permission to file a claim which would place all issues related to the 1985 reimbursement rate before this court. Claimant, of course, also has the more risky option of waiting until there is a final determination by the Federal court on the underlying substantive issue, seeking permission to file a late claim on the basis of that decision only if successful in the other forum. The risks are that there may be no decision in the Federal litigation within the applicable period of limitations (CPLR 213 [2]) and/or that the prolonged delay and possibly other factors will persuade this court to deny permission for such late filing. With respect to the reimbursement rate for 1986, 1987 and 1988, claimant would be well advised to file claims or (perhaps preferably) notices of intention at the appropriate times.
None of the proposed solutions are ideal. The situation is unfortunately confusing and difficult for a claimant who chooses to forego the more accepted route of bringing an article 78 proceeding or State action for declaratory relief and asking for money damages as incidental to the primary relief sought.[8] There was nothing improper in claimant’s choice of the Federal court as a forum for resolving the underlying issue involved here; the decision may have legitimately been shaped by a desire to benefit from the Federal court’s experience in construing Federal statutes. That choice, however, carries certain risks — in this instance imperiling claimant’s right to recover amounts withheld in the past. Instituting a *714 proceeding in Supreme Court or in this court would better protect the right to recover past payments but would naturally lose the arguable benefits of having the underlying issue decided by Federal Judges in the first instance. There aré, in short, both positive and negative considerations attendant to any of the courses of action that were open to claimant when the dispute arose. At this juncture, claimant should assess those risks in determining how to continue pursuing its effort to recover the funds withheld for fiscal year 1985.
Claimant’s motion is denied, without prejudice to its right to bring a subsequent motion as outlined above.

. Briefly, this factor requires that for hospitals that do not reach an over-all 75% occupancy rate, Medicaid reimbursement shall be calculated as if the total "patient days” at the hospital were sufficient to achieve such an occupancy rate. Including these imputed patient days into the reimbursement calculation affects the per diem rate of reimbursement, which is established annually, and results in a reduction of the over-all amount reimbursed to service providers who did not achieve an over-all 75% occupancy rate.

. This Federal statute requires that State plans for reimbursement "take into account the situation of hospitals which serve a disportionate number of low income patients with special needs” and "meet the costs which must be incurred by efficiently and economically operated facilities”.

. [1] Counsel agree, and we see no significant reason to question, that *709 July 20, 1987, when OMH informed claimant of its final per diem Medicaid reimbursement rate for 1985, is the date on which the alleged wrong actually occurred. Certainly the amount of damages were known at that point, even if actual reimbursement occurs at a later date. Permission to file an untimely claim would therefore be necessary to institute an action for recovery of the 1985 amounts in dispute, as neither a claim nor a notice of intention was filed within six months of that date (Court of Claims Act § 10 [4]). Because there has not yet been any formal notification of the final reimbursement rates for 1986, 1987 or 1988, the time for instituting actions to recover amounts for those years has not yet accrued.

. [2] The court’s jurisdiction is broader than this. Court of Claims Act § 9 (3-a), (9-a) and (12) authorize the court to hear three additional types of cases — unjust conviction and imprisonment claims, disputes regarding an insurer’s obligation to indemnify or defend a defendant in any pending action and EDPL 304 proceedings.

. The refund application was ultimately denied for failure to comply with the time limitation contained in the Labor Law, but the Court of Appeals held that the availability of this alternative remedy did not bar claimant’s right to sue in the Court of Claims for restitution of moneys paid under compulsion of a void statute.

. An exception to Guaranty Trust Co. v State of New York (299 NY 295), based on the decision in Paramount Film Distrib. Corp. v State of New York (27 AD2d 420), is mentioned in the Citibank v State of New York (103 Misc 2d 348) decision. There is good reason to doubt the validity of this exception in view of subsequent decisions involving the Paramount claim (see, 37 AD2d 226, revd 30 NY2d 415, mot to amend remittitur granted 31 NY2d 678), and, in any event, it would not be applicable to the instant proposed action.

. See n 3 regarding the likely accrual date for this cause of action.

. We note that the situation is even more difficult and confusing for a claimant who does commence an equitable proceeding in Supreme Court but subsequently has his demand for monetary relief determined to be something other than "incidental” or, for any reason, outside that court’s jurisdiction. (See, e.g., Schaffer v Evans, 86 AD2d 708, affd 57 NY2d 992; Matter of Adams v New York State Civ. Serv. Commn., 51 AD2d 668.)