OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be modified, without costs, and the case remitted to the Court of Claims for further proceedings in accordance with this memorandum and, as so modified, affirmed.
The City of New York and the State of New York (acting through the Office of General Services on behalf of the State Division of Housing and Community Renewal) executed an agreement for the Division’s use of approximately 14,400 square feet of office space on the twelfth floor of 2 Lafayette Street in New York City. The fee was $216,000 per year ($15 per square foot) payable in equal monthly installments of $18,000. The term commenced on April 1,1984 and terminated on January 31,1986, but the parties agreed that if the Division chose to remain in possession after January 31, 1986 it could do so for an annual fee of $338,400 ($23.50 per square foot) payable in equal monthly installments of $28,200. The agreement also included a provision which permitted either party to cancel it at any time, without penalty, upon 45 days’ written notice. Oral modification of the agreement was expressly prohibited. The agreement was approved and filed by the State Comptroller in accordance with State Finance Law § 112 (2).
The Division continued to occupy the premises after January 31, 1986, and the fee was increased to $23.50 per square foot as the agreement provided. Some time during the spring of 1987, it vacated approximately one half of the premises and, pursuant to an oral agreement with the City, the monthly fee was reduced to account for the change. In June 1989, the parties agreed orally to further reduce the amount of occupied space and the pro rata fee. The Division vacated the premises completely in August of 1989.
The City maintains that the State owed it more than $240,000 in arrearages when it vacated the premises and the *985 City filed a claim in the Court of Claims to recover that amount. The State asserted, as an affirmative defense, noncompliance with State Finance Law § 112 (2). It contended that the agreement’s express term ended January 31, 1986 and the State was not liable for any charges accruing thereafter. The Court of Claims accepted that argument, believing that the Comptroller could not have intended to approve a potentially limitless obligation, and concluded that the agreement expired on January 31, 1986. Applying the provisions of the Real Property Law, it terminated the State’s obligation by operation of law on October 1, 1986 (see, Real Property Law §§ 232, 232-c). Concluding that any arrearages claimed by the City accrued after that date, the Court of Claims granted summary judgment in favor of the State. The Appellate Division affirmed.
Section 112 (2) of the State Finance Law, as it then read, required that any contract in excess of $5,000 made for or by a State entity be approved and filed by the State Comptroller. The statute’s purpose is to protect the public from governmental misconduct and improvidence (see, Parsa v State of New York, 64 NY2d 143, 147, rearg denied 64 NY2d 885).* The statute applied to this agreement, and the Comptroller approved and filed this agreement in accordance with it. The question presented is whether his approval extended beyond January 31, 1986 to include the occupancy after that date.
The agreement approved by the Comptroller included an initial fixed term and the option to continue the occupancy thereafter for so long as the parties mutually desired, terminable by either without penalty on 45 days’ written notice. We know of no authority suggesting that the Comptroller lacked the power or discretion to approve the option to extend the agreement beyond January 31, 1986 on the terms set forth, and neither the State nor the dissent cite any. In the absence of any restriction on the Comptroller’s authority to approve such an agreement, the lower courts erred in applying Real Property Law § 232 — a statute of limited purpose and application — to limit either the Comptroller’s authority or the contract’s terms. Inasmuch as the agreement was executed in compliance with State Finance Law § 112 (2), the purposes of *986 that statute were met — the Comptroller fulfilled his legal obligation to determine that the expenditure was not improvident or extravagant. He had no authority to conditionally approve the contract or change its terms to incorporate an unexpressed limitation provided by section 232 of the Real Property Law, as the dissent suggests. The State Finance Law empowered him only to approve the contract as submitted or reject it. Because State Finance Law § 112 (2) was complied with here, the City is not foreclosed from asserting a claim for the period after the expiration of the fixed term.
Notwithstanding the Comptroller’s approval of the agreement of indefinite duration, however, the State’s liability on this agreement does not extend to the modifications under which the Division occupied a portion of the premises until August of 1989. The Comptroller approved the obligations and liability of the State only as set forth in the agreement — a specific amount of space for a specific fee — which could not be modified orally. When the City and the State attempted to change the agreement by reducing the amount of space and the pro rata fee, they acted outside the original agreement and contrary to the provisions of the approved contract. The oral modification of this agreement constituted a new agreement and because the Comptroller did not approve or file the modified agreement which involved an obligation in excess of $5,000, the City may not maintain an action on it (see, Parsa v State of New York, 64 NY2d, at 147, supra). Inasmuch as oral modification was prohibited, we need not consider whether an authorized modification that only diminishes the State’s obligation requires new compliance with State Finance Law § 112 (2) as a matter of law (compare, e.g., Rosefsky v State of New York, 205 AD2d 120, 123-124; Westgate N. v State Univ., 77 Misc 2d 611, 614-615, affd 47 AD2d 1004, lv denied 36 NY2d 647).
Factual issues regarding the date the initial agreement was terminated by the oral modification and the amount of arrearages due remain to be determined. Accordingly, the case should be remitted to the Court of Claims for further proceedings.

 The dissent identifies another purpose, which it labels as the first purpose; to ensure that all public commitments are backed by appropriated funds (dissenting opn, at 989). But the dissent concedes that the two-year term of this contract was enforceable and there is no way that a Comptroller could project legislative appropriations for multiyear contracts. Nor could he have done so here, except for the unusual circumstance that his approval was not obtained until the second year of the fixed term.