■ COINTECH, INC., Appellant, v MASARYK TOWERS CORPORATION, Respondent. [777 NYS2d 76]—

Order, Supreme Court, New York County (Paula J. Omansky, J.), entered December 9, 2002, which, to the extent appealed from as limited by the briefs, granted defendant's motion to dismiss the complaint for failure to state a cause of action, unanimously reversed, on the law, without costs, the motion denied and the complaint reinstated.

Plaintiff Cointech is in the business of installing and operating coin-metered laundry facilities at multifamily apartment houses. Defendant Masaryk Towers is a domestic corporation organized under the Private Housing Finance Law for the purpose of owning, maintaining and operating a "Mitchell-Lama" limited-profit housing complex located at 61 Columbia Street in Lower Manhattan. Masaryk consists of six residential buildings totaling 1,108 apartments and, as a Mitchell-Lama complex, it is under the direct supervision of the New York City Department of Housing Preservation and Development (HPD).

In February 2001, Cointech's president, Theodore Yates, contacted Al Barnett, an on-site employee of Arco Management, Masaryk's managing agent, to discuss the possibility of Cointech becoming the provider of laundry services for Masaryk's residents. In June 2001, Arco officially solicited bids for the provision of laundry services. However, nowhere in the published request for proposal, the letter from Arco soliciting bids nor the specification and bid sheet was it mentioned that any laundry

services agreement between Masaryk and the successful bidder had to be approved by HPD.

In October 2001, Barnett advised Yates that Cointech's bid had been accepted and requested that Cointech prepare and submit its standard laundry lease agreement. On October 19, 2001, Yates delivered to Barnett two signed lease agreements, which provided that in exchange for Cointech's right to lease the laundry rooms and charge a fee to residents for laundry services, Cointech would pay Masaryk $7,500 per month. In addition, paragraph 25 of the lease included the following warranty: "The person executing this Lease on behalf of the Lessor [Masaryk] has read the terms of this Lease and is fully authorized to enter into this Lease on behalf of the Lessor and warrants that this lease is binding on the Lessor." On October 19, 2001, the president of Masaryk's Board, Bernice McCallum, signed the lease.

On December 13, 2001, Yates wrote to Arco's vice-president, Scott Langan, to set up an installation date for the laundry equipment. Langan responded by telephone, stating that the signed lease had been misplaced and that a duplicate signed lease was required because HPD would accept only original signatures. In a December 19, 2001 letter, Yates indicated that he had executed a duplicate lease and was forwarding it to Arco "for your submission to HPD." Yates alleges that the telephone conversation with Langan between December 13 and 19 was the first time he was made aware that HPD's approval of the lease was required. According to Yates, he spoke to Barnett on subsequent occasions concerning the delay over the installation date and the fact that his company would soon incur storage charges on the laundry equipment. During these conversations, Barnett acknowledged that HPD was "dragging its feet," but still indicated that its approval of the lease was merely a procedural formality.

In March 2002, HPD refused to approve the lease agreement on the ground that it did not comply with section 3-07 of the HPD Rules (28 RCNY) for Mitchell-Lama complexes (HPD Rules) in that it failed to contain anti-kickback and termination fee provisions, as well as a clause governing HPD's right to cancel any contract on 10 days' written notice. Instead, Masaryk forwarded Cointech an HPD-approved license agreement, which differed in some respects from the original lease agreement. Cointech rejected Masaryk's proposed license agreement.

In April 2002, Cointech commenced the instant action against Masaryk seeking specific performance of the lease agreement, or, alternatively, damages for breach of contract, deprivation of

property, promissory estoppel, false representation and breach of the duty of good faith and fair dealing. Masaryk moved to dismiss pursuant to CPLR 3211 (a) (1) and (7), arguing that plaintiff knew that Masaryk was supervised by HPD and that pursuant to section 3-07 of the HPD Rules, the lease was unenforceable absent HPD's approval, which had been denied. Cointech opposed the motion and cross-moved for summary judgment. It argued that the lease was enforceable because Masaryk never apprised it that HPD's approval was required and, to the contrary, its president, McCallum, had warranted in the executed lease that she had the authority to bind Masaryk. Cointech further contended that section 3-07 was inapplicable to the lease because said provision only applied where Masaryk was spending money, and in the agreement at issue here, Masaryk was only making money.

Supreme Court granted Masaryk's motion to dismiss and denied Cointech's cross motion. Initially, the court found that section 3-07 was applicable to the instant lease, thereby necessitating HPD approval, since the lease directly impacted the project's residents and could subject Masaryk and HPD to liability. Next, the court ruled that plaintiff's estoppel-based claims were flawed because Masaryk did not do anything to convey a misimpression about HPD's role of which, in any event, Cointech should have been aware. The court expressly stated: "At no time did McCallum or Barnett ever represent that they had final contracting authority." In addition, the court relied on the principle that estoppel may not be invoked against a governmental agency to prevent it from discharging its statutory duties, such as those mandated by section 3-07.

Finally, the court found that McCallum and Barnett lacked the capacity to enter into a contract that violated HPD's regulations. It held that these purported agents lacked apparent authority because there was no misleading conduct by the principal, HPD, upon which Cointech may have relied. Finally, the court rejected the misrepresentation claim based on the lack of evidence that Masaryk or its agents made any misrepresentations that were known to be false when made.

On appeal, Cointech argues that the lease agreement is valid and enforceable against Masaryk because Masaryk failed to disclose that HPD approval was required prior to execution of the lease. Cointech further contends that section 3-07 does not apply to the subject lease because it did not involve an expenditure of funds by Masaryk. We agree with Cointech's first argument and conclude that its complaint should not have been dismissed on the ground that HPD's failure to approve the lease

violated section 3-07. Accordingly, we reverse and reinstate the complaint.

The Private Housing Finance Law designates HPD as the supervising agency for Mitchell-Lama projects located in the City of New York (Private Housing Finance Law § 2 [15]), and further authorizes HPD to promulgate supplementary rules and regulations (HPD Rules) (*see* Private Housing Finance Law § 23 [2]). In this regard, HPD has promulgated a rule requiring that "[i]n housing companies with five hundred (500) dwelling units or greater, contracts over $10,000 shall be submitted for HPD written approval" (28 RCNY 3-07 [b] [2]).[1]

The HPD Rules also require that contracts entered into by Mitchell-Lama housing companies include provisions granting HPD the right to cancel any contract on 10 days' written notice (28 RCNY 3-07 [b] [7]). Such rules also include an anti-kickback provision (28 RCNY 3-07 [c] [3]). The HPD Rules also include a provision stating: "Any contract, agreement or retainer, entered into by the housing company or its managing agent in violation of the provisions herein shall be subject to immediate cancellation by HPD" (28 RCNY 3-07 [d]). It is undisputed that the lease executed by the parties does not comply with these provisions.

Masaryk based its motion to dismiss entirely on section 3-07 of the HPD Rules. It argues that since HPD did not approve the lease before it was executed, section 3-07 renders the lease unenforceable as a matter of law and precludes each of the causes of action in Cointech's complaint. We disagree. In its complaint, Cointech alleged that it was never informed by Masaryk or its agents that HPD's approval of the lease agreement was required. Masaryk submitted affidavits disputing this lack of knowledge,[2] and the motion court's decision reflects either an acceptance of Masaryk's averments or a finding that Cointech was somehow chargeable with the knowledge that HPD approval was required. This was error.

On a motion to dismiss pursuant to CPLR 3211, a court must construe the complaint liberally, accept as true the facts alleged in the complaint and accord the plaintiff the benefit of every possible favorable inference (*see Richbell Info. Servs. v Jupiter Partners*, 309 AD2d 288, 289 [2003]). Whether Cointech was aware of HPD's involvement is a disputed issue of fact that cannot be the basis for dismissal pursuant to CPLR 3211.

---

**1.** This rule has since been amended to increase the threshold for contracts needing HPD approval to $30,000.

**2.** Barnett submitted an affidavit stating that Yates had acknowledged during a walk-through of the premises that he was aware of the requirement that HPD must approve any lease.

Accepting, as we must, that Cointech was not informed of the HPD-approval requirement prior to execution of the contract, Masaryk's defense premised on section 3-07 cannot be sustained. As a general matter, contracts entered into with state or municipal entities that are not approved by the necessary public officials in compliance with statutory requirements are invalid and unenforceable (*see Parsa v State of New York*, 64 NY2d 143, 147 [1984]; *Becker & Assoc. v State of New York*, 48 NY2d 867 [1979]; *Hamlin Beach Camping, Catering, & Concessions Corp. v State of New York*, 303 AD2d 849, 851 [2003]). This is true because "[a] party contracting with the State is chargeable with knowledge of the statutes which regulate its contracting powers and is bound by them" (*Parsa v State of New York*, 64 NY2d at 147).

However, the distinguishing feature in this case is that Cointech was not entering into a contract with the State or one of its agencies. Insofar as alleged in its complaint, Cointech was not aware that Masaryk was a Mitchell-Lama complex, that HPD would have any role in the transaction or that any contract with Masaryk had to be approved by HPD. Thus, unlike the cases cited above, Cointech was not put on notice that any services contract with Masaryk over $10,000 had to be approved by HPD until after the lease was signed, nor was it chargeable with such knowledge.

The facts alleged in Cointech's complaint make it clear that Masaryk may not rely on section 3-07 of the HPD Rules to avoid liability under the lease in these circumstances. The complaint alleges an arm's length business transaction and the documents in the record relating to Masaryk's solicitation of bids make no reference to any role by HPD. Moreover, after Masaryk's agents informed Yates that Cointech's bid was accepted and invited him to submit its standard laundry lease agreement for execution, Masaryk's president signed the lease in her official capacity and returned it to Cointech. Crucially, the lease agreement signed by Masaryk's president included a warranty that she was "fully authorized to enter into this Lease" and that "this lease is binding on the Lessor." Thus, it is not simply that Cointech was ignorant of HPD's role with respect to the lease, but rather that it was expressly misled as to the requirement of third-party approval.

Although we agree with the motion court that Masaryk's agents lacked the authority to waive HPD's requirements (*see Hamlin Beach Camping, Catering, & Concessions Corp. v State of New York*, 303 AD2d at 851), we disagree with its finding that Masaryk may not be held liable in damages for breaching

an otherwise enforceable agreement. In the absence of a condition precedent in the lease providing notice to Cointech that approval by a municipal agency was required, Cointech is not prohibited from recovering damages caused by the breach of that lease (*see Bistrian Gravel Corp. v Wainscott Northwest Assoc.*, 116 AD2d 681 [1986] [contractor was entitled to payment for installation of fire cisterns even though installation rejected by fire department since oral agreement did not make approval of fire department a condition precedent for payment]; *Continental Ins. Co. v Albany Hous. Auth.*, 85 AD2d 782, 783 [1981] [affirmative defense that approval of work by commissioner of housing was condition precedent to payment was dismissed as it was not included in parties' contract]; *see also Public Improvements v Jack Parker Constr. Corp.*, 59 AD2d 671 [1977]).

Accordingly, as Masaryk's president had actual authority to bind it to a lease agreement that did not include HPD's approval as a condition precedent, and Masaryk failed to perform its obligations thereunder, Cointech has stated a valid cause of action for breach of that agreement. Although the principle that estoppel may not be invoked against a governmental agency to prevent it from discharging its statutory duties (*see Matter of Parkview Assoc. v City of New York*, 71 NY2d 274, 278-279 [1988], *cert denied* 488 US 801 [1988]) stands in the way of specifically enforcing the instant lease in violation of section 3-07 of the HPD Rules, Cointech's claims for damages should not have been dismissed.

With respect to Cointech's additional argument that section 3-07 does not apply to the instant case because the lease does not involve an expenditure by Masaryk, we find the issue is not properly before us. The record discloses that HPD has specifically rejected the instant lease due to its noncompliance with various provisions of section 3-07 of the HPD Rules. The appropriate method of challenging this administrative determination is a CPLR article 78 proceeding (*see Hamlin Beach Camping, Catering, & Concessions Corp. v State of New York*, 303 AD2d at 852; *Matter of Konski Engrs. v Levitt*, 69 AD2d 940, 941 [1979], *affd* 49 NY2d 850 [1980]), which Cointech has not pursued. Since Cointech has not availed itself of the procedure available for seeking review of a determination of an administrative agency, the issue is beyond this Court's review.

The motion court's additional bases for dismissal of the complaint are also flawed. The court's rejection of Cointech's estoppel claim was based on inappropriate factual findings regarding Cointech's knowledge of Masaryk's Mitchell-Lama status, as well as the misconception that, in this regard, estop-

pel was being sought against a governmental entity. The court's reliance on Cointech's failure to demonstrate that Masaryk's agents acted with apparent authority was also misplaced. Masaryk's president had actual authority to act on its behalf, and, contrary to the court's finding, the principal here was Masaryk, not HPD.

Nor was Cointech's misrepresentation claim subject to dismissal on the ground that there is no evidence that the alleged misrepresentations were intentionally false when made. Cointech's allegations of misrepresentations, privity of contract, justifiable reliance and injury are sufficient, at this juncture, to state a valid cause of action against Masaryk (*see Parrott v Coopers & Lybrand*, 95 NY2d 479, 484 [2000]). Concur— Nardelli, J.P., Andrias, Sullivan, Ellerin and Gonzalez, JJ.