OneWest Bank, FSB v Deutsche Bank Natl. Trust Co. (2020 NY Slip Op 03483)





OneWest Bank, FSB v Deutsche Bank Natl. Trust Co.


2020 NY Slip Op 03483


Decided on June 18, 2020


Appellate Division, First Department


Friedman, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 18, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

David Friedman,J.P.
Dianne T. Renwick
Jeffrey K. Oing
Anil C. Singh, JJ.


306119/11 

[*1]OneWest Bank, FSB, Plaintiff-Respondent,
v
Deutsche Bank National Trust Company, etc., et al., Defendants, Signature Bank, Defendant-Appellant.
Signature Bank, Third-Party Plaintiff-Appellant,
v
JPMorgan Chase Bank, N.A., Third-Party Defendant-Respondent.



Defendant/third-party plaintiff appeals from the judgment of the Supreme Court, Bronx County (Donna M. Mills, J.), entered July 31, 2018, awarding plaintiff the principal sum of $292,000, plus interest of $280,320, against defendant/third-party plaintiff and dismissing the third-party complaint. Appeal from order, same court and Justice, entered May 1, 2018, which denied defendant Signature's cross motion for summary judgment and granted third-party defendant JPMorgan Chase Bank's motion to dismiss the third-party complaint, and sua sponte granted plaintiff judgment against Signature Bank.




Meyner and Landis LLP, New York (David B. Grantz and Mark J. [*2]Krueger of counsel), for appellant.
Butler, Fitzgerald, Fiveson & McCarthy, New York (David K. Fiveson of counsel), for OneWest Bank, FSB, respondent.
Zeichner Ellman & Krause LLP, New York (Ronald M. Neumann and Mark Zeichner of counsel), for JPMorgan Chase Bank, N.A., respondent.



FRIEDMAN, J.P.


This appeal arises from a somewhat anomalous situation in which a bank (defendant/third-party plaintiff Signature Bank [Signature]) sold its customer an "official check" that was drawn on a second bank (third-party defendant JPMorgan Chase Bank, N.A. [Chase])[FN1]. The check was subsequently misappropriated, improperly endorsed, deposited into the wrongdoer's account at a third bank, and, upon presentment, improperly paid by Chase. We hold that, on these facts, Signature — which played no role in the depositing, collection or payment of the misappropriated check — is not liable for the loss to its customer.
In 2007, plaintiff's predecessor-in-interest, Dynamic Mortgage Bankers, Ltd. (Dynamic), extended a $509,400 mortgage loan to defendants Wayne Campbell and Lisa Mills-Campbell (the Campbells) for the purchase of a residential property in the Bronx from defendants Ruel Richards and Lorice Massias. Dynamic wired the funds representing the loan to its settlement agent, defendant Rubin & Licatesi, P.C. (R & L), at the mortgage settlement account R & L maintained with Signature. Dynamic instructed R & L to use $292,000 of the wired funds to satisfy the sellers' mortgage, which was held by Argent Mortgage Company, LLC (Argent). The Argent mortgage was already in default at the time, and a foreclosure action was pending.
According to the affidavit of Patrick Manzi, Signature's senior vice president and director of bank operations, "[a]t the time in question, Signature did not issue its own official checks." Instead, as explained in Manzi's affidavit and in Signature's interrogatory responses, under an agreement between Signature and Integrated Payment Systems Inc. (IPS), Signature customers were provided by IPS with computer software and check forms that gave them the capability, upon Signature's approval, to print out a Signature "Official Check" at their own offices. Although such a check bore Signature's logo and the signatures of Signature officers, and designated Signature as the "Drawer," the check also indicated in the lower left corner that it was "Issued by Integrated Payment Systems Inc., Englewood, Colorado" through "JPMorgan Chase Bank, N.A., Denver, Colorado." In addition, the check bore Chase's ABA routing number.
In sum, when a Signature customer requested the issuance of an official check, Signature would debit the customer's account in the requested amount, wire the same amount to the IPS account at Chase, and notify the customer that it had permission to print out the check. In essence, official checks of this kind were drawn by Signature, not on its own account, but on the IPS account at Chase.
Using the above-described procedure, R & L procured the issuance of a Signature "Official [*3]Check" in the amount of $292,000, payable to Argent's settlement agent, Steven J. Baum P.C., and dated November 8, 2007. The check identified R & L as the "Remitter."[FN2] According to a principal of R & L, R & L "forwarded the $292,000 bank check to Kim Saunders, the title closer, who undertook on behalf of the title company . . . to forward this check to Steven J. Baum, P.C. to pay off the seller's [sic] mortgage."
It is undisputed that Steven J. Baum P.C., the payee of the check, never received it. The check was, through some unknown chain of events, misappropriated, improperly endorsed, and deposited into the joint account that the sellers of the underlying real property (defendants Richards and Massias) maintained at defendant TD Bank, N.A. The check was subsequently presented for payment to Chase, the drawee bank, which paid it on January 8, 2008.[FN3]
As a result of the misappropriation of the Signature check, the Argent mortgage was not paid off. Accordingly, Argent continued its pending foreclosure action, which culminated in the transfer of the property by referee's deed, recorded October 9, 2009, to defendant Deutsche Bank National Trust Company (Deutsche Bank), in its capacity as trustee for a mortgage pool.
Meanwhile, in August 2009, Dynamic had assigned its mortgage to plaintiff. Plaintiff subsequently commenced this action in July 2011, seeking to quiet title to the underlying real property, and naming as defendants Deutsche Bank, the Campbells and R & L, among others. Plaintiff's counsel represents that, at the time this action was commenced, plaintiff "believed that Argent's foreclosure proceeded in error as the Check payable to Steven J. Baum was negotiated." When the truth about the disposition of the check emerged, plaintiff filed a supplemental summons and amended complaint naming as additional defendants Signature, TD Bank, Richards, Massias, and Kim Saunders, the title closer.[FN4]
Plaintiff asserted two causes of action against Signature, one "for breach of transfer warranties pursuant to [Uniform Commercial Code] § 4-207" and one for monies had and received. Signature answered the complaint and asserted a cross claim against TD Bank.
In February 2013, Supreme Court (Friedlander, J.) issued an order (the 2013 order) that, among other things, granted TD Bank's motion to dismiss all claims against it. Although plaintiff on this appeal adheres to the position that its claim against TD Bank should not have been dismissed, it did not appeal the 2013 order, which is not brought up for review on the present appeal by Signature from the judgment against it.
Once plaintiff had settled with Deutsche Bank and the claims against TD Bank had been dismissed, the only actively litigated claim remaining in the case was plaintiff's claim against [*4]Signature. In July 2013, Signature served responses to plaintiff's interrogatories, and in March 2014, it produced an employee from its operations department for deposition. Thereafter, in July 2014, Signature was granted leave, without opposition, to file an amended answer and to commence a third-party action against Chase. In its third-party complaint, Signature asserted only a common-law claim, based on theories of negligence and indemnification, against Chase. Signature did not assert any claim against Chase under the Uniform Commercial Code.
In December 2014, Chase moved to dismiss Signature's third-party claim on the ground that any claim that Signature might have had against Chase was governed by the Uniform Commercial Code, not the common law, and as such was barred by the three-year statute of limitations asserted to be applicable to a claim under section 4-401 of the Code, since Chase had paid the check in January 2008. Chase further argued that Signature's common-law theories of liability were displaced by the Uniform Commercial Code and therefore failed to state a cause of action. Plaintiff and Signature both opposed the motion. In addition, Signature cross-moved for summary judgment dismissing the amended complaint as against Signature. Plaintiff opposed the cross motion.
The motion and cross motion were argued and decided on May 1, 2018. The court granted Chase's motion and, on Signature's cross motion for summary judgment, upon a search of the record, granted plaintiff summary judgment against Signature. The court did not specify which of the two causes of action against Signature (the claim under the Uniform Commercial Code or the claim for monies had and received) was the basis for the grant of summary judgment to plaintiff. Signature has appealed from the ensuing judgment, dated July 24, 2018.[FN5]
We turn first to plaintiff's cause of action against Signature under the Uniform Commercial Code, which is predicated on the contention — denied by Signature, as more fully discussed below — that Signature made payment on the misappropriated and improperly endorsed check. Although the amended complaint characterizes this cause of action as one "for breach of transfer warranties pursuant to UCC § 4-207," it is plain that, even if Signature could be deemed liable for breach of a warranty arising under that statute, Dynamic (plaintiff's assignor) was not a beneficiary of any such warranty under the statute's express terms [FN6]. In fact, plaintiff appears to recognize that it does not have any claim under section 4-207, since it has not referred to that statute as the basis of its claim against Signature either in its opposition to Signature's cross motion in Supreme Court or in its brief on this appeal.
From plaintiff's appellate brief and its counsel's affirmation in the record addressing this issue, it is apparent that plaintiff now seeks to hold Signature liable under the Uniform Commercial Code for having paid, upon an improper endorsement, a check that had been [*5]purchased with the funds of plaintiff's assignor. It is well established, of course, that a drawee bank paying a check that is not properly payable — such as a check that is not properly endorsed — incurs liability to the drawer of the check (see Uniform Commercial Code § 4-401 [permitting a bank to charge against its customer's account any item that is "properly payable from that account"]; Clemente Bros. Contr. Corp. v Hafner-Milazzo, 23 NY3d 277, 283 [2014] ["New York's version of the Uniform Commercial Code . . . imposes strict liability upon a bank that charges against its customer's account any item' that is not properly payable'"]; Tonelli v Chase Manhattan Bank, N.A., 41 NY2d 667, 670 [1977] ["the drawee bank (paying) a check over a forged indorsement . . . does so at its peril and may not charge its customer's account for a check so paid," and "(t)he same rule should prevail where a bank honors a check payable to order which lacks the indorsement of the payee"]; Atlantic Bank of N.Y. v Israel Discount Bank, 108 Misc 2d 342, 345 [App Term, 1st Dept 1981] ["A check bearing a forged indorsement is not properly payable and the drawer has a cause of action against the drawee-payor bank"]). Under the same principle, a bank's improper payment of a cashier's check (or, as denominated in this case, an "official check") gives rise to a cause of action on the part of the remitter of the check (see Old Republic Natl. Title Ins. Co. v Bank of E. Asia Ltd., 291 F Supp 2d 60, 68 [D Conn 2003] [applying New York law]; see also Kerr S.S. Co. v Chartered Bank of India, Australia & China, 292 NY 253, 262 [1944] [in holding that the purchase of a cashier's check could not be rescinded, the Court of Appeals noted that "(u)ntil title to (a cashier's check) is transferred to the payee the remitter' or purchaser' remains its owner and in some circumstances may sue upon the instrument as if named as payee"]).
While it appears from the foregoing that plaintiff, as Dynamic's assignee, might well have had a cause of action (now time-barred) against the bank that made payment on the misappropriated check in January 2008, the record establishes that Signature was not the payor of that check. As previously discussed, although the check bore Signature's logo and identified Signature as the drawer, the check was actually drawn on funds on deposit at IPS's account at Chase. This is indicated on the check itself, which states that it was "[i]ssued" by IPS and bears Chase's name and ABA routing number. In addition, the record contains affidavits by two competent witnesses (Manzi of Signature and Debra Anders, an executive of the parent company of IPS), each of whom identifies Chase as the drawee of the check. The record establishes that Signature's involvement with the check was limited to: (1) wiring, at the request of its client R & L, $292,000 to the IPS account at Chase to cover the anticipated check; (2) charging a corresponding debit to the mortgage settlement account that R & L maintained at Signature; and (3) notifying R & L that it had approval to print the check at its own office, using the software and forms previously provided by IPS. There is no claim that Signature acted improperly, or in any way harmed plaintiff's assignor, in taking any of these steps. Thereafter, Signature played no role in the depositing, collection or payment of the check — the processes that damaged plaintiff's assignor. It neither paid the check itself nor presented it for payment to any other bank.
Notwithstanding the foregoing uncontroverted evidence, plaintiff argues that Signature should be deemed to have paid the check on two grounds, neither of which is availing. First, plaintiff seizes on the fact that Signature's original answer in this action alleged in the cross claim against TD Bank that "Signature paid the Check in good faith so transferred or presented to it by TD in reliance of the warranties of TD." However, Signature's original answer has been superseded by an amended answer that omits any such allegation. Signature was granted leave by the court to file the amended answer, without opposition by plaintiff; accordingly, the original [*6]answer on which plaintiff relies is no longer operative.[FN7]
Plaintiff also argues that Signature is liable for "the wrongful acts of IPS/Chase" (namely, the improper payment of the check) because Signature "delegat[ed] its contractual responsibility [to its customer, R & L] to [Signature's] undisclosed agent," namely, IPS. This argument fails. To begin, on this record, Signature had no "contractual responsibility" to R & L in the payment of the check because Signature was not the drawee of the check and, therefore, had no role in paying it. More fundamentally, there is no basis in the record for plaintiff's assertion that "IPS was [Signature's] agent," much less for plaintiff's implicit contention that IPS's purported agency somehow extended to Chase, the actual payor of the check [FN8]. While the "Master Service Agreement" (MSA) between IPS and Signature did create a principal-agent relationship, that relationship was between IPS as principal and Signature as agent [FN9]. Nor does plaintiff advance its cause by asserting that the relationship between Signature and IPS was "undisclosed" to Signature's client, R & L. In fact, as previously noted, the form on which R & L printed out the subject check indicated that the funds were being drawn on IPS's account at Chase, the bank whose ABA routing number appeared at the bottom of the instrument. Moreover, the record contains the affidavit of Richard Harris Rubin, Esq., a principal of R & L, in which Rubin makes no claim that his firm had been unaware of Signature's relationship with IPS or was misled by Signature in any way.
Signature also argues that plaintiff lacks standing to pursue claims under the UCC based on the wrongful payment of the check because plaintiff's assignor, Dynamic, was not the remitter of the check and because plaintiff has not established that Dynamic assigned such a claim to it when Dynamic assigned the mortgage. We need not address these arguments in view of our foregoing discussion demonstrating that Signature has no liability for the wrongful payment of the check on the ground that it was not the drawee of the check and never presented the check or paid it.
Having established that Signature was entitled to summary judgment dismissing the Uniform Commercial Code claim against it, we now turn to plaintiff's cause of action against Signature for money had and received [FN10]. We conclude that, on this record, the claim for money had and received also should have been dismissed. A claim for money had and received lies where "one party possesses money that in equity and good conscious he ought not to retain and [*7]that belongs to another" (Parsa v State of New York, 64 NY2d 143, 148 [1984]). "The remedy is available if one [person] has obtained money from another, through the medium of oppression, imposition, extortion or deceit, or by the commission of a trespass" (id. [internal quotation marks omitted]). In this case, the money in question was a deposit in R & L's bank account at Signature, and the record establishes that Signature treated those funds exactly as R & L, its customer, directed. Specifically, pursuant to R & L's request to purchase an official check in the amount of $292,000, Signature wired $292,000 to IPS and debited R & L's account in the same amount. Signature neither retained the money nor used the money for its own benefit. There is not a shred of evidence that Signature engaged in conduct that could be described as "oppression, imposition, extortion or deceit, or . . . the commission of a trespass" (id.). Signature has no obligation "in equity and good conscience" (id.) to absorb the loss that was caused by the theft of the check, the check's improper acceptance by TD Bank, and the check's improper payment by Chase — events in which Signature had no involvement at all. Accordingly, on this record, Signature is entitled to summary judgment dismissing the claim for money had and received.
Finally, our dismissal of the complaint as against Signature renders moot Signature's third-party claim for common-law indemnification against Chase. We therefore affirm the order appealed from insofar as it dismissed Signature's third-complaint, without reaching the question of whether the third-party claim is time-barred or otherwise not legally viable.
Accordingly, the judgment of Supreme Court, Bronx County (Donna M. Mills, J.), entered July 31, 2018, awarding plaintiff the principal sum of $292,000, plus interest of $280,320, against defendant/third-party plaintiff and dismissing the third-party complaint, should be modified, on the law, to dismiss the complaint, and otherwise affirmed, with costs to defendant/third-party plaintiff against plaintiff. The appeal from the order, same court and Justice, entered on or about May 1, 2018, should
be dismissed, without costs, as subsumed in the appeal from the judgment. The Clerk is directed to enter an amended judgment accordingly.
All concur.
Judgment, Supreme Court, Bronx County (Donna M. Mills, J.), entered July 31, 2018, modified, on the law, to dismiss the complaint, and otherwise affirmed, with costs, to defendant/third-party plaintiff against plaintiff. Appeal from order, same court and Justice, entered on or about May 1, 2018, dismissed, without costs. The Clerk is directed to enter an amended judgment accordingly.
Opinion by Friedman, J.P. All concur.
Friedman, J.P., Renwick, Oing, Singh, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JUNE 18, 2020
CLERK



Footnotes

Footnote 1:The term "official check" does not appear in the Uniform Commercial Code but is apparently used in the banking industry interchangeably with the term "cashier's check" to denote a check drawn by a bank on its own funds at the request of a customer (see 12 CFR part 229, app E, § II[I]).

Footnote 2:" Remitter' means the buyer from the obligated bank of a cashier's check or a teller's check" (Uniform Commercial Code § 4-104[1][k]).

Footnote 3:From a comparison of copies of the check in the record with documents in the record that bear Richards's signature, it appears that the check was endorsed by Richards, who seems simply to have signed his own name on the back of the check rather than forging the payee's endorsement. In any event, it is undisputed that the check was not properly endorsed and should not have been accepted for collection by TD Bank or paid by Chase.

Footnote 4:Plaintiff has withdrawn its claim against R & L and has settled its claim against Deutsche Bank. Richards and Saunders have never appeared or answered. Plaintiff has been granted a default judgment against Richards.

Footnote 5:Although the latest written submissions in the motion sequence is dated February 25, 2015, the court did not hear argument until May 2018. The reason for the three-year delay is not explained in the record or the briefs.

Footnote 6:The warranties established by section 4-207 run, by the express terms of the statute, from a "customer or collecting bank" only "to the payor bank or other payor who in good faith pays or accepts the item" (§ 4-207[1]) or "to [such customer's or collecting bank's] transferee and any subsequent collecting bank who takes the item in good faith" (§ 4-207[2]). Dynamic, as the remitter (through its agent, R & L) of the "Official Check" in question, does not fall within any class designated as a beneficiary of the warranties arising under section 4-207.

Footnote 7:Signature's counsel in Supreme Court admitted to that court that, at the time the original answer was drafted, counsel had labored under a misapprehension of the facts concerning which bank had been the payor of the check.

Footnote 8:In this regard, it should be noted that IPS, a vendor of payment system services, does not appear to be a bank at all and is not alleged to have acted as a bank in this matter.

Footnote 9:Specifically, the MSA provides in pertinent part: "IPS appoints Client [Signature] as its agent to use or sell Payment Instruments." The MSA defines the term "Payment Instruments" to include an "IPS Official Check."

Footnote 10:As previously noted, Supreme Court, in granting plaintiff summary judgment against Signature, did not specify whether it was granting plaintiff relief on its Uniform Commercial Code claim, its claim for money had and received, or both.